(74 App. Div. 284.)

HUTTON v. SMITH et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. PLEADING AND PROOF—VARIANCE.
   Allegation of complaint that C. received money belonging to plaintiff, which she held in trust for him, is not inconsistent with proof that the money originally belonged to C., but had been by her secured to plaintiff by her voluntary act, and thereafter held by her in trust for him.

2. TRUST—PROOF.
   There being proof that C. received money in trust for plaintiff, the amount of which is not shown, the subsequent deposit of money in a bank in trust for him is a declaration, and justifies a finding, that she held the money on deposit as his money, and has set it apart as belonging to him.

3. SAME.
   Declaration of C. that she had money belonging to plaintiff, which she held for him; the fact that she opened an account in a bank in her name as trustee for him; and the fact that she took from that account a certain sum of money, and opened a new account in trust for him,— justify a finding that by the deposit to the new account there was a direct appropriation of money that she held in trust for him, and that thereby there was created an irrevocable trust, which he was entitled to enforce.

4. WITNESS—COMPETENCY—TRANSACTION WITH DECEDENT.
   Plaintiff in an action to enforce a trust against land inherited by defendants from C. may testify to a conversation, in which he took no part, between C. and her brother in relation to money which she held for plaintiff, and that when he was with her she drew from the bank money deposited in trust for him, and paid it to the grantor, from whom she received a deed for the land; plaintiff taking no part in the transactions.

5. LIMITATIONS—TRUSTS.
   Defendant, under the defense of limitations to action to enforce trust, must show there was a direct repudiation of the trust, and that plaintiff knew it.

¶ 5. See Limitation of Actions, vol. 33, Cent. Dig. §.510.

**6. SAME—REPUDIATION OF TRUST.**

That a trustee mingled the trust funds with her own in purchase of property. and took title in her own name, does not justify a presumption that she thereby intended to repudiate the trust so as to set the statute of limitations running.

Appeal from special term, New York county.

Action by John P. Hutton against Rosanna Smith and others. From judgment for plaintiff, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Gilbert W. Minor, for appellants.
Michael J. Kelly, for respondent.

INGRAHAM, J. The plaintiff in this action seeks to have an equitable lien declared upon certain real estate held by the defendants, based upon investments by the defendants' predecessor in title of certain money held by her in trust for the plaintiff in the purchase of certain real estate which the defendants have inherited from the trustee. It appears that the plaintiff was born in Ireland either in the year 1858 or in 1863; that his parents both died prior to the year 1868, in which year he was brought to this country by an aunt; that at that time there resided in the city of New York an uncle named Philip Hutton and an aunt (Rose Ann Coyle); that upon the plaintiff's coming to New York he went to live with his uncle, Philip Hutton, and remained with him until he was placed in the Catholic protectory; that subsequently he lived with his aunt Rose Ann Coyle until he married, in January, 1883; that prior to this time his uncle seems to have left New York, and the only evidence about the uncle subsequent to the time that the plaintiff left the protectory was that he died in the soldiers' home, Dayton, Ohio, on October 1, 1896; that on September 20, 1869, Rose Ann Coyle opened an account in the Emigrant Industrial Savings Bank in the name of "Rose Ann Coyle for her nephew, John Hutton." The total deposits in this account, including interest, were $205.82, and the account was closed by Rose Ann Coyle on September 22, 1877. On January 9, 1875, Rose Ann Coyle opened an account by a deposit of $2,283.37 in the Union Dime Savings Institution in her own name, "in trust for John Hutton," numbered 101,114. On January 9, 1879, Rose Ann Coyle opened another account in the same bank in her own name, as "trustee, John Hutton," numbered 130,010, and transferred from the account No. 101,114 $1,969.85 to the new account, at the same time depositing in cash the sum of $6.15, making a total deposit of $1,976. On May 15, 1879, she closed both accounts by drawing out the amount to her credit,—being $3,000 in the account No. 101,114, and $1,976 in account No. 130,010,—and on the same day received a deed for the real property in question, subject to certain mortgages, paying the balance therefor in cash; the cash payment being an amount in excess of these two sums drawn from the savings bank. There was evidence of declarations made by Rose Ann Coyle to third parties that she had money for the plaintiff; that the money was put in trust by the plaintiff's uncle "for the orphan," as she called

him; and that she was going to take care of it until he was of age, or fit to take care of it, and see that justice was done on all sides. She also declared that the real property in question belonged to John. The plaintiff testified, after an objection and exception by the defendants, that he was present some time after he came to this country, when he was about 15 years of age, at a conversation between his aunt, Rose Ann Coyle, and his uncle, Philip; that at that time Philip demanded from the aunt some money, which she refused; that the uncle said to the aunt, "I will have that money, or I will know the reason why," to which the aunt replied, "No;" that she had it "in trust for John, the orphan, and you can't get it." The witness was also allowed to testify, after an objection and exception by the defendant, that he went to the savings bank with the deceased when this money was drawn out; that from the savings bank he and the deceased went to the house of the grantor of the property, and at that time she paid the money, and received the deed of the property, which appears to have been dated and acknowledged upon the same day that the money was drawn from the bank and these accounts closed. Upon this evidence the court found that Rose Ann Coyle, in making the deposit of $1,976, "intended that the same should ultimately become the property of, and be used for the benefit of, the plaintiff, and thereby created an irrevocable trust in his favor; that said money so deposited as aforesaid was used in the purchase of the houses or of the said premises so bought by said Rose Ann Coyle, which premises are now owned by the defendants; and that the plaintiff is entitled to impress a trust upon said property for the amount claimed in the complaint, the same being part of the money formerly deposited in the said Union Dime Savings Institution." The defendants insist that this finding is inconsistent with the cause of action set up in the complaint, alleging that at various times the said Rose Ann Coyle, as trustee, received various sums of money, the property of the plaintiff, aggregating upwards of $2,181.82, and deposited the same in the Emigrant Industrial Savings Bank and the Union Dime Savings Bank, and that these allegations were not sufficient to sustain a finding that Rose Ann Coyle created a trust by the deposit in the banks. We think, however, that this variance is immaterial. The allegation of the complaint that Rose Ann Coyle received sums of money belonging to the plaintiff, which she held in trust for him, is not inconsistent with the finding that the money originally belonged to Rose Ann Coyle, but had been by her secured to the plaintiff by her voluntary act, and that she thereafter held the money for him in trust. There is nothing alleged in the complaint as to the original source of the money that was held in trust for plaintiff by the deceased; but, irrespective of this, there is evidence to justify a finding that Rose Ann Coyle did receive money from the plaintiff's uncle, to be held by her in trust for the plaintiff. We have a declaration to that effect made to a third party, who does not appear to have been an interested witness. There is no direct evidence as to the amount of money that the aunt actually held in trust for the plaintiff; but, having received money in trust for the plaintiff, the sub-

sequent deposit in the savings bank of a sum of money in trust for the plaintiff justifies a finding that the aunt did hold the money on deposit as the money of the plaintiff, and had set apart the sum as belonging to him. We have the fact that there was originally deposited in the Emigrant Bank a sum of money which was held by the aunt in trust for the plaintiff. This was certainly a declaration that at this time the aunt did hold that money for the plaintiff. That account was closed on September 22, 1877. Prior to the closing of that account, and on January 9, 1875, the aunt had opened the account in the Union Dime Savings Institution in trust for John Hutton (the plaintiff being the only John Hutton then living with whom the aunt was connected) by the deposit of $2,283.37. From the date of that deposit to January 9, 1879, there had been a succession of deposits to this account, and but two drafts,—one on January 2, 1877, which seems to have been returned to the bank on January 10th of the same year, and the sum of $150 on July 1, 1878,— so that on the 1st day of January, 1879, there appeared to the credit of this account the sum of $4,969.85. On that day Rose Ann Coyle opened a new account with the Union Dime Savings Bank, and transferred from the old account the sum of $1,996. This new account was opened as trustee for the plaintiff. Taking the declaration of the deceased that she had money belonging to the plaintiff, which she held for him, and the fact that there was an account in the bank in her name as trustee for him, the fact that she took from that account a certain sum of money, and opened a new account in trust for the plaintiff, was certainly evidence that at that time a portion of money standing to her credit as trustee for the plaintiff in the first account was held in trust for the plaintiff. There is also evidence that the deceased had from January, 1871, to July, 1874, an account in this bank standing in her own name, from which the inference can be drawn that she realized the distinction between an account of her own money and an account held in trust for the plaintiff. We think, therefore, that the court below was justified in finding that by this deposit of $1,969.85 there was a direct appropriation by the deceased of a sum of money that she held in trust for the plaintiff, and that thereby there was created an irrevocable trust, which the plaintiff was entitled to enforce. As there is no claim by the plaintiff to the sum of $3,000, the amount due on the first account, the right of the plaintiff to that sum is not involved.

The exception of the defendant to the admission of the testimony of the plaintiff to the conversation between the deceased and her brother, and to the occurrence at the bank when the deceased drew out the money, and her subsequent delivery to the grantor, from whom she received a conveyance of the premises in question, would not justify a reversal of the judgment. The finding of the special term could be sustained without this testimony. There is no substantial dispute as to the fact that this money was used in the purchase of the property, and the inference that on the same day that this money was drawn from the savings bank the deceased received a conveyance of the house, and paid the consideration therefor with this money, can be drawn from the conceded facts. We do not think, however, that this

testimony was incompetent, or in violation of section 829 of the Code of Civil Procedure. None of the testimony that was admitted was as to a personal transaction between the plaintiff and the deceased. The plaintiff testified to a conversation between the deceased and her brother in relation to money which she held. He was then a boy about 15 years of age, and took no part in the conversation. He had nothing to do with the dispute between his uncle and aunt, and this testimony, we think, was competent, under O'Brien v. Weiler, 140 N. Y. 281, 35 N. E. 587. In that case the testimony of a party to the action, who was the widow of the defendant's testator, as to a conversation between her husband and daughter, in which the husband said that he had taken all the daughter's money out of the bank and bought railroad stock with it, was held not to be incompetent, as the witness took no part in the conversation. Nor do we think that the testimony of the plaintiff as to the transaction at the bank, and the subsequent payment of the money drawn from the bank to the grantor of the premises, from whom the deceased received the deed, related to any transaction between the witness and the deceased. The transaction was between the bank and the deceased upon her drawing out the money, and between the deceased and the grantor of the premises on the receipt of the deed and the payment of the consideration therefor. In neither of these transactions did the plaintiff take part. Nor do we think the defense of the statute of limitations is available. There is no evidence that this was a repudiation by the deceased of any trust; nor does it appear that the plaintiff at that time had any knowledge of the fact that the account from which this money was drawn was an account of money held in trust for him, or that the title of this property was taken in the name of the deceased. That certainly cannot be presumed, and as the defense of the statute of limitations is an affirmative defense, to be alleged and proved by the defendant, to make it available the defendant must show that there was a direct repudiation of the trust, and that the plaintiff had knowledge thereof. The fact that the money that the deceased held in trust for the plaintiff was mingled with other money of her own in the purchase of the property, the title to which she took in her own name, would not justify a presumption that thereby she intended to repudiate her obligation to consider the investment in the property an investment of the money held in trust for the plaintiff to the extent of his interest. So far as this question is concerned, the case of Mabie v. Bailey, 95 N. Y. 206, is in point; and it was there held that the right of action did not accrue until the testator's death, which was on January 12, 1892, from which date the plaintiff had 10 years within which to bring the action.

Upon the whole case, we think the judgment was right, and that it should be affirmed, with costs. All concur.