LORRAINE O'HAYER, Appellant, v. HONORE DE ST. AUBIN et al., as Executors of OVIDE DE ST. AUBIN, JR., Deceased, Respondents.

Second Department, August 19, 1968.

*Cahill, Gordon, Sonnett, Reindel & Ohl (John P. Ohl, Paul W. Williams, Jerome Doyle* and *Allen S. Joslyn* of counsel), for appellant. *McCarthy, Fingar, Gaynor, Sullivan & Donovan (Arthur F. Gaynor* and *John G. McQuaid* of counsel), for respondents.

HOPKINS, J. In 1942 Ovide de St. Aubin, Sr., created a revocable *inter vivos* trust, which provided that its terms were to be interpreted under the laws of Rhode Island. He designated himself as a trustee, together with Ovide de St. Aubin, Jr., his son, and three Rhode Island residents, as cotrustees. He limited the duration of the trust for the lives of himself and his son, Ovide, Jr., and directed that the income from the trust should be paid wholly to him during his lifetime and, on his death, to Lorraine, his daughter (the appellant), and to Ovide, Jr., in equal shares. Upon the termination of the trust, the principal was directed to be paid one half to the appellant (or, if she were not living, to her husband and her descendants) and one half to Honore de St. Aubin, Ovide, Jr.'s wife (or, if she were not living, to Ovide, Jr.'s descendants).[1]

This litigation by the appellant in essence challenges Ovide, Jr.'s right to purchase shares of corporate capital stock from the trust and seeks an accounting of his actions as trustee. After the entry of the interlocutory judgment Ovide, Jr., died and his executors have been substituted as parties defendant and are the respondents on this appeal.[2] Our main concern is with the construction of the terms of the trust which grant to Ovide, Jr., broad powers of administration far beyond the traditional notions of trusteeship; the pertinent provisions are set out in full in the appendix to this opinion.

In effect, these provisions command that the rule of undivided loyalty which the law exacts from trustees shall not burden the settlor or Ovide, Jr., in their proceedings as trustees; and we are asked by this appeal to determine the rights and responsibilities of Ovide, Jr., in the light of the settlor's prescription.[3]

---

1. A jurisdictional question was before us in a prior appeal in this action (*O'Hayer* v. *de St. Aubin,* 44 Misc 2d 786, affd. 24 A D 2d 604).

2. It will be thus observed that the trust is now terminated.

3. Though the trust instrument directs that its provisions be governed by the law of Rhode Island, at the trial neither party saw fit to introduce evidence of Rhode Island law and they have treated the issues as if Rhode Island and New York law were the same in the area of the rule against conflicting loyalties. Accordingly, we have considered the issues as though the law of both States were identical (cf. *City Bank Farmers Trust Co.* v. *Taylor,* 76 R. I. 129, where New York precedents are used).

The appellant contends that the exemption from the rule did not permit Ovide, Jr., to purchase a portion of the trust assets or to deal with the corporate enterprises in which the trust holds a substantial interest so as to gain a personal profit. She alleges breaches of trust by Ovide, Jr., in diverting opportunities open to the trust corporations which he personally controlled, in failing to pay income to the beneficiaries, in obtaining loans from the trust corporations, and in neglecting to petition for the appointment of substituted trustees to replace the original three Rhode Island trustees, the last of whom died in 1955. (The latter claim has been abandoned on this appeal.)

The Special Term held that Ovide, Jr., could legally purchase trust assets at a fair price and directed that a reference be held to determine whether a fair price had been paid. Except in one instance, which Special Term said should be subject to scrutiny by the Referee, no improper actions were found to have been committed by Ovide, Jr. In general, we are in accord with the Special Term's comprehensive and well grounded findings, but we are also of the opinion that in certain aspects the reference should include an accounting by the respondents as to specific transactions. We treat at length, accordingly, only certain of the principal questions raised by this appeal.

## THE PURCHASE OF STOCK BY THE TRUSTEE

The assets set over to the trust by the settlor were all of the outstanding capital stock (1,300 shares) of Vesta Corporation (hereafter called "Vesta") and all his 1,300 shares of stock of Vesta Underwear Corporation (hereinafter called "Underwear"). Ovide, Jr., had a pretrust option to purchase 1,000 of these Underwear shares and it is undisputed that he properly exercised his option in the latter part of 1942 and that at that time the remainder of the Underwear shares (1,200), held by the estate of a predeceased other son of the settlor, were transferred to the appellant. The relative stock holdings at the time of the death of the settlor in 1943 were as follows:

|  | Vesta | Underwear |
|---|---|---|
| Trust | 1,300 | 300 |
| Appellant | .... | 1,200 |
| Ovide, Jr. | .... | 1,000 |

The subsequent 1962 transfer to Ovide, Jr., from the trust, by sale, of 300 shares of Underwear and 52 shares of Vesta led to the following distribution of stock between the parties (giving effect also to the terms of the trust upon its termination):

| | Vesta(wt) | Vesta(nt) | Underwear(wt) | Underwear(nt) |
|---|---|---|---|---|
| Appellant's family | 624 (48%) | 650 (50%) | 1,200 (48%) | 1,350 (54%) |
| Ovide Jr.'s family | 676 (52%) | 650 (50%) | 1,300 (52%) | 1,150 (46%) |

(wt: — "with transfer"; nt: — "no transfer")

No doubt, the rule of undivided loyalty due from a trustee (*Meinhard* v. *Salmon*, 249 N. Y. 458; *Dutton* v. *Willner* 52 N. Y. 312; *Munson* v. *Syracuse, Geneva & Corning R. R. Co.*, 103 N. Y. 58, 74) may be relaxed by a settlor by appropriate language in the trust instrument in which he, either expressly or by necessary implication, recognizes that the trustee may have interests potentially in conflict with the trust (2 Scott, Trusts [3d ed.], § 170.09, p. 1321; cf. *Rosencrans* v. *Fry*, 12 N. J. 88; *Steele Estate*, 377 Pa. 250); at least, our courts under these conditions enforce the desire of the settlor to secure the services of a person to act as trustee in whom he has confidence, when, without the existence of exculpatory provisions, the trusteeship would be declined by the designee (*Matter of Balfe*, 245 App. Div. 22; *Matter of Hammer*, 16 A D 2d 111, affd. 12 N Y 2d 893; *Heyman* v. *Heyman*, 33 N. Y. S. 2d 235). That is not to say that the settlor's directions allow the trustee free rein to deal with the trust; the law interposes to require that the trustee always exercise good faith in his administration (*Industrial & General Trust* v. *Tod*, 180 N. Y. 215, 225; *Matter of Balfe, supra*). "No matter how broad the provision may be, the trustee is liable if he commits a breach of trust in bad faith or intentionally or with reckless indifference to the interests of the beneficiaries, or if he has personally profited through a breach of trust" (3 Scott, Trusts [3d ed.], § 222.3, p. 1777). Moreover, the language limiting the general rule is strictly construed so that the trustee's actions will not be approved if he trespasses outside the boundaries of the powers granted (see note, Directory Trusts and the Exculpatory Clause, 65 Col. L. Rev. 138, 139–140; note, Trusts: Effect of exculpatory clause, 26 Cornell L.Q. 165).

Here the settlor, in appointing his son a trustee, clearly had in mind the operation and continuation of the family corporations in which his fortune was invested to the end that the fullest control should be wielded by the son. The settlor in express language provided that the general rule prohibiting individual profit by the trustee should not apply; and he indeed said that it was his "express wish and desire that my said son and myself shall benefit and profit from our trusteeships hereunder by the

control of the majority of the stock of said corporations herein effectuated '' (par. 4).

In express language, too, the settlor authorized his son to purchase at any time any part or the whole of the shares of stock held in the trust, subject only to the proviso that ''the amount of the purchase price and the terms of sale must be approved of by an instrument in writing delivered to the trustees hereunder executed by my said son Ovide de St. Aubin, Junior, and by my said daughter Lorraine '' (par. 5).

Special Term correctly held that his language conferred power on Ovide, Jr., to purchase the stock in issue from himself as trustee. Perhaps, technically, the language chosen by the settlor does not signify that an option to purchase was granted to the son; certainly, the language permits self-dealing in the stock by the son at any time during the existence of the trust. We need not justify the purchase by resort to the terms of the settlor's will and codicil, which divided the stock between the son and daughter at the same proportion (52%–48%) achieved by the son through his purchase. The codicil itself provided that the stock held in trust was to be disposed of according to the trust. Yet, the son's good faith in electing to make a partial purchase of the stock held in trust may be judged in the light of the settlor's own testamentary desires.

The appellant argues that her approval of the price and terms of sale required by the trust instrument logically extends to the sale itself. The proviso requiring approval in the settlor's language is clearly restricted to the price and terms of sale. With the latter we are not concerned, as no sale on credit is contemplated. If the instrument had prescribed an approval of the *purchase* by the appellant, without the approval the son could not have acquired the stock (*O'Connor* v. *Waldo,* 83 Hun 489, affd. 158 N. Y. 672; *Suarez* v. *de Montigny,* 1 App. Div. 494, affd. 153 N. Y. 678; *Matter of Rolston,* 162 Misc. 194; *Dyer* v. *Blair,* 62 R. I. 498). But the settlor quite evidently did not condition the purchase on the appellant's approval; his true objective was to insure that the *price* offered should be subject to the appellant's approval. Hence, Special Term correctly decided that the trustee's right of purchase could not be excluded by the appellant's refusal to approve the sale and that the standard of good faith obligatory on the trustee must be met by a reference to determine a fair price. The strong and precise language of the trust used by the settlor to permit self-dealing by the trustee cannot be defeated by an arbitrary veto by the appellant, for, otherwise, the trust provisions viewed in their totality become meaningless and unrealistic.

## THE CLAIMS OF BREACH OF TRUST IN CORPORATE MANAGEMENT

Concededly, Ovide, Jr., through his trusteeship and his individual stock ownership, controlled the management of the family corporations. "Where the trustee holds sufficient shares to control actually or substantially the conduct of the corporation, he is under a duty to exercise that control for the benefit of the trust" (3 Scott, Trusts [3d ed.], § 193.2, p. 1598; see, also, *Matter of Hubbell,* 302 N. Y. 246; *Matter of Auditore,* 249 N. Y. 335; *Matter of Shehan,* 285 App. Div. 785). But the broad scope of powers which the settlor accorded to the son in the operation of the corporations and the exculpation of his liability for self-dealing reduced the son's accountability for his actions as trustee to the single criterion of good faith. Considered by that measure, the trustee's failure to pay corporate dividends during the term of the trust, under the circumstances shown by the evidence, did not amount to a breach of trust. Here for the 20 years that the trust had been in effect the appellant never sought the payment of dividends; she was apparently content that income in the form of salaries was being paid to her husband and sons. Additionally, she produced no evidence that good business judgment did not warrant the retention of earnings in the corporations for the furtherance of their interests.

We are of a different view concerning the substantial loans which Ovide, Jr. received from the corporations.[4] No proof, to be sure, was introduced by the appellant to show that the activities of the corporations were hampered to the detriment of the trust by the making of the loans; and the provisions of the trust exonerating the trustee from the burden of responsibility arising from self-dealing authorize his borrowings. Nevertheless, the appellant argues that, at the same time the trustee loaned corporate funds to himself, he caused corporate borrowings to be made from banks at interest rates in excess of the interest paid by the trustee on his individual loans from the corporations. We find the proof not entirely satisfactory in this aspect of the record and, accordingly, we direct that the reference include the taking of evidence and the making of findings with respect to this claim. Under the implicit requirement of good faith, if indeed Ovide, Jr., benefited from this manipulation of corporate funds, his estate must respond for any damage resulting to the trust (*Carrier* v. *Carrier,* 226 N. Y. 114; cf. Restatement, 2d Trusts, § 170). It is of course unavail-

4. Ovide, Jr., testified that as of October 30, 1965 he owed Underwear $59,262.89 and as of February 28, 1966 owed Vesta $149,719.31.

ing to the respondents that the appellant and members of her branch of the family also borrowed from the corporations, or that corporate loans to Ovide, Jr., were made prior to the creation of the trust. In both instances no trustee relationship existed. Nor is there in this record any adequate evidence of ratification by the appellant of the loans.

We think, too, that in another sector the appellant has cause for complaint. She urges correctly that Ovide, Jr., could not divert to himself opportunities for expansion which fell within the normal expectations of the two corporations under the trust. As trustee in control of the corporations, Ovide, Jr. was obligated to preserve and advance their economic objectives and to promote new or extended activities which legitimately would belong to them (*Blaustein* v. *Pan American Petroleum & Transport Co.,* 293 N. Y. 281; *Guth* v. *Loft, Inc.,* 23 Del. Ch. 255; *Burg* v. *Horn,* 380 F. 2d 897). In the case of Tahoma Mills, Inc., the evidence indicates that the trustee violated the canon of good faith which the law demands even in the face of the trust language allowing self-dealing. Tahoma was a corporation owned by Ovide, Jr., and his family. It was formed to build and lease a factory for the Siler City Manufacturing Company which produced goods for Sears, Roebuck Company. Siler City is owned by Pohatcong Hosiery Mills, Inc. and Sears, Roebuck Company.

Tahoma in the beginning received substantial loans from Vesta (about $138,000 as of November 3, 1951). Moreover, the original paid-in surplus of the common stock of $300 apparently came from Vesta; and the 1953 financial statement of Vesta showed that it owned the three issued shares of Tahoma. This, Ovide, Jr., testified, was an accountant's error; the accountant did not testify at the trial. Later on the stock came into the possession of Ovide, Jr.'s family. The respondents contend that the $300 was charged to Ovide, Jr.'s open account with Vesta, but this is not apparent on this record.

Later Tahoma bought land at North Wilkes, North Carolina, and built a factory for lease to L & L Manufacturing, Inc. (a transaction which Special Term held should be subject to scrutiny at the reference). By these means, L & L, a wholly owned subsidiary of Vesta, was caused to pay a substantial rental to Tahoma.

In our opinion, the evidence in the record establishes that Ovide, Jr., overreached his trust by siphoning off Tahoma for the benefit of his branch of the family. Vesta's funds were largely used for the inception of Tahoma's activities; doubt at

least exists whether Tahoma's stock was not originally issued to Vesta; and unquestionably Ovide, Jr., acted for both corporations in negotiating the lease between L & L and Tahoma. Under the circumstances, Tahoma must be considered a legitimate outgrowth of Vesta's and Underwear's business objectives which could not be snatched away for the trustee's own advantage. Certainly, the self-dealing contemplated by the settlor could not reasonably be said to include a maneuver of the trustee which would suspend their business for the aggrandizement of the trustee; and equally it could not excuse the diversion of corporate opportunities to the trustee's personal benefit.

The respondents' contention that Ovide, Jr., absolved himself from the necessity of observing his duty when the appellant's children refused his offer to them of a subscription to 40% of Tahoma's stock lacks force. Quite apart from the obvious conclusion that neither waiver nor ratification by the appellant can be spelled out from those facts, the trust duties relating to the corporate business remained and could not be sloughed off by Ovide, Jr.'s invitation to the appellant's children to join in the diversion of a corporate opportunity in breach of trust. Hence, Ovide, Jr.'s estate must account for Tahoma's assets; and the reference should be extended for this purpose.

As to the other claims of loss of corporate opportunity which the appellant makes, we have examined them and see no reason to disagree with Special Term's determination. It is clear that both the appellant and Ovide, Jr., treated the acquisition of the stock of Pohatcong by Ovide, Jr., as a personal rather than as a corporate enterprise. The appellant for many years did nothing to correct the wrong, if in fact she thought that it was a breach of trust. In the case of Lido-Atlantic Corporation, we find no tangible expectancy belonging to either Vesta or Underwear with which Ovide, Jr., interfered in its formation and operations. Speculation in land located in Long Island cannot be reasonably regarded as the legitimate objective of the trust corporations, both of which had for years been engaged in the business of manufacturing soft goods.

We have considered the other arguments of the appellant and have concluded that no grounds there urged for relief are tenable.

Lastly, it is our view that the respondents' defense of the Statute of Limitations does not apply to the claims for which Special Term directed a reference or those which we have recognized by including in the reference. The failure of full disclosure of the facts by the trustee to the appellant tolled the statute (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 201.13,

p. 2–21; see, also, *Hutton* v. *Smith,* 74 App. Div. 284, affd. 175 N. Y. 375; *Butler* v. *Foster,* 246 App. Div. 680). The respondents' defense of ratification and waiver have already been considered.

The interlocutory judgment should be modified, on the law and the facts, (a) so as to include within the reference (1) an accounting by the respondents with respect to any loss suffered by the trust with respect to interest payable at 4% by Ovide, Jr., at times when the trust corporation from which he had borrowed was paying a higher interest rate on its own loans and (2) an accounting by the respondents with respect to the assets of Tahoma Mills, Inc., which are herewith directed to be considered assets of the trust; (b) so as to strike out the third decretal paragraph of the judgment (dealing with the fairness of the lease between Tahoma and L & L Manufacturing, Inc., inasmuch as Tahoma's assets are now to be treated as assets of the trust); and (c) so as to strike from the fifth decretal paragraph of the judgment the word '' fifth '' (which operates to dismiss the fifth cause of action, alleging a diversion of corporate opportunity as to Tahoma). As so modified, the judgment should be affirmed insofar as appealed from, without costs.

Benjamin, Munder and Martuscello, JJ., concur; Brennan, Acting P. J., not voting.

Interlocutory judgment modified, on the law and the facts, (a) so as to include within the reference (1) an accounting by the respondents with respect to any loss suffered by the trust with respect to interest payable at 4% by Ovide, Jr. at times when the trust corporation from which he had borrowed was paying a higher interest rate on its own loans and (2) an accounting by the respondents with respect to the assets of Tahoma Mills, Inc., which are herewith directed to be considered assets of the trust; (b) so as to strike out the third decretal paragraph of the judgment (dealing with the fairness of the lease between Tahoma and L & L Manufacturing, Inc., inasmuch as Tahoma's assets are now to be treated as assets of the trust); (c) so as to strike from the fifth decretal paragraph of the judgment the word '' fifth '' (which operates to dismiss the fifth cause of action, alleging a diversion of corporate opportunity as to Tahoma). As so modified, interlocutory judgment affirmed insofar as appealed from, without costs.

" 4. Purposes and objectives which I, the said Ovide de St. Aubin, Senior, most definitely desire to carry out and obtain through the creation of this trust and which I hereby expressly authorize, empower and direct my Trustees named herein and their successors to carry out and obtain include the following: — that the stock of Vesta Underwear Company and Vesta Corporation held under this trust shall be voted so that substantial salaries shall during the term of this trust be paid by one or both of said corporations to me throughout my lifetime and to my son, Ovide de St. Aubin, Junior, throughout his lifetime, and to James L. O'Hayer throughout his lifetime, and to such of the descendants of my daughter Lorraine and such of the descendants of my son Ovide de St. Aubin, Junior, as shall at any time be officers or employees of either of said corporations, and that the amount of such salaries for which such stock shall be voted shall be in the absolute and uncontrolled discretion of myself and my said son while we are both trustees hereunder, and of my said son alone when I am no longer a trustee hereunder by reason of my decease or otherwise, and in myself alone if my said son should cease to be a trustee hereunder. Such salaries shall not be paid except for services rendered or to be rendered, but the value of such services and amount to be paid for services rendered or to be rendered shall be determined in the absolute and uncontrolled discretion of my son and me while we are both trustees hereunder and of my son alone when I am no longer a trustee hereunder and in myself alone if my son should cease to be a trustee hereunder and no person having any right or interest under this trust shall question any exercise of discretion hereunder by myself or my said son. Although it may be a general rule of law that a trustee shall not profit from his trusteeship, I expressly declare and direct that this rule shall be completely ignored and set aside in the administration, construction and interpretation of this trust in so far as it could relate to or affect or be applied to my trusteeship or the trusteeship of my son hereunder or to any benefits which may accrue through our trusteeships or the trusteeship of either of us to myself, or to my said son, or to any of the following; my wife, my daughter Lorraine O'Hayer, her husband, her lawful descendants, my said son's wife, his lawful descendants and the husbands and wives of his lawful descendants; and I expressly declare and direct that it is my express wish and desire that my said son and myself shall benefit and profit from our trusteeships hereunder by the control of the majority of the stock of said corporations herein effectuated, by our votes as stockholders, by our votes as directors and by our acts as officers to as great an extent as we would lawfully be entitled to benefit and profit if said stock were owned by us absolutely and free from all trust, and, if and when only one of us is trustee, as if said stock were owned by the one who is trustee absolutely and free from all trust. The stock of Vesta Underwear Company and the stock of Vesta Corporation held under this trust shall be during the term of this trust voted in all matters and on all motions and resolutions by and in accordance with the wishes and directions of my said son and myself so long as both of us are trustees hereunder and when by my decease or otherwise I shall cease to be a trustee hereunder, then by my said son alone; and if my said son shall cease to be a trustee hereunder then by me alone. My trustees hereunder other than myself and my son shall have no control over or responsibility for the voting of said stock while either my said son or myself shall be a trustee hereunder, and shall execute all proxies and other instruments which may be requisite so that said stock may be voted as aforesaid by myself and my son or by me alone or by my son alone, as the case may be. My said son

and myself are each of us expressly authorized and empowered hereby to vote the stock of said corporations so as to elect ourselves or either of us and any of the aforesaid relatives, husbands and wives as directors of said corporations and as officers of said corporations, and I expressly direct that said stock shall be so voted and that trustees hereunder who are directors of either of said corporations shall so vote the stock held hereunder so that myself and my son shall serve as officers and directors of said corporations unless we are prevented from so serving by the condition of our health or other similar obstacle. At any time when both my said son and I are trustees hereunder we shall at all times be authorized to delegate to one of us the power to vote all of said stock at any meeting of the stockholders of said corporations with the same effect as if both of us cast the vote.

"5. My said son and myself and each of us are hereby expressly authorized and empowered at any time or times to purchase as individuals from my trustees hereunder any part or all of the shares of stock at any time held under this trust and to make such purchases upon such terms, including payment by installments, and payment by notes secured by the shares of stock purchased, as shall be approved of by myself and my said son or either of us as trustees acting in our capacity as trustees, provided only that if any such purchase by either of us shall be made during my own lifetime the amount of the purchase price and the terms of sale must first be approved of by an instrument in writing executed by myself and my said daughter Lorraine and my said son Ovide de St. Aubin, Junior, and delivered to the trustees hereunder; and provided further, that if such purchase shall be made after by decrease the amount of the purchase price and the terms of sale must be approved of by an instrument in writing delivered to the trustees hereunder executed by my said son Ovide de St. Aubin, Junior, and by my said daughter Lorraine, if she is living at the time of such sale, and if my said daughter Lorraine shall not be living at the time of said sale such instrument in writing must first be executed by her husband, James L. O'Hayer, if he be then living, and if both my said daughter Lorraine and her said husband shall then be deceased such instrument in writing must first be executed by at least one of the children of said Lorraine who is then of age. The fact that such purchase shall constitute a purchase by a trustee of part or all of the trust property shall not operate to impair or invalidate any such purchase in any manner whatsoever and no one shall question any such purchase if it shall be approved in the manner hereinabove prescribed. My Trustees and their successors are hereby authorized and empowered during the said term of this trust in their absolute and uncontrolled discretion to sell at any time or times it shall to them appear desirable any part or all of the shares of stock in either or both of said corporations at any time held under this trust to my wife, my said daughter Lorraine, any descendant of my said daughter Lorraine O'Hayer, any descendant of my said son Ovide de St. Aubin, Junior, said James L. O'Hayer, Honore de St. Aubin or to any one or more of them at such price and on such terms as shall be determined to be satisfactory by me during my life time or by my said son, Ovide de St. Aubin, Junior, after my decease. Each and all of the trustees hereunder, expressly including the trustees other than myself and my said son as well as my said son as well as myself and my said son are expressly exhonerated from all liability and responsibility in connection with any such sale and each trustee shall be accountable only for proceeds of sale actually received by him. Proceeds of any sale shall be held under this trust and invested and reinvested as my trustees shall determine."