■ In the Matter of JEAN JASTRZEBSKI, Deceased. CHRISTOPHER JASTRZEBSKI et al., Appellants; Estate of JAMES P. FLYNN, Deceased, et al., Respondents, et al., Respondent. [948 NYS2d 689]—

On April 22, 2005, the decedent, Jean Jastrzebski (hereinafter the decedent), and her husband, Kenneth Jastrzebski, died in an automobile accident. The decedent was survived by her three adult sons (hereinafter the appellants). Her will provided, inter alia, for her residuary estate to be distributed into an inter vivos trust (hereinafter the trust) which she created for the appellants' benefit. She appointed her brother, James P. Flynn (hereinafter James), as the executor of the estate and cotrustee, with Kenneth Jastrzebski, of a related trust.

The assets of the decedent's estate included a 42.8% interest in a corporation known as Darik Enterprises, Inc. (hereinafter Darik), valued at $2.7 million, in which James also held a 42.8% interest, with a second brother holding the remaining interest, and a life insurance policy on James's life having a face value of $1.25 million dollars (hereinafter the policy). An exculpatory clause in the decedent's will exonerated her fiduciaries from acting with an undivided duty of loyalty and permitted them to

act on behalf of her estate with respect to entities in which the fiduciaries held an interest (hereinafter the exculpatory clause).

In July 2007, after asking the appellants whether they wished to retain the policy and learning that they wanted the policy to remain in the estate, James sold the policy to Darik for the sum of $235,966 on the ground that the estate lacked sufficient funds to pay the annual expense of maintaining the policy. James subsequently filed an intermediate account (hereinafter the account) of his transactions as the executor of the estate, which indicated that he paid the annual premium for the policy in the amount of $42,480 with estate funds in February 2007, and that the estate had a cash balance of $2,028,318.86 and uncollected receivables in excess of $1 million as of June 30, 2008. In 2009, the appellants filed objections to the account, which included their contention that the sale of the policy to Darik, inter alia, constituted an act of self-dealing by James.

Following James's death on October 24, 2010, the appellants petitioned, inter alia, for a determination that the sale of the policy by James was void as the result of James's fraud and self-dealing, and to restrain the distribution of the proceeds of the policy, and moved, among other things, in effect, for summary judgment on the petition. The motion was opposed by James's estate and Thomas Flynn, who succeeded Kenneth Jastrzebski as a cotrustee of the trust. The opposition papers included an affirmation by an attorney from the law firm representing, among others, Darik. The Surrogate's Court, inter alia, denied that branch of the motion which was, in effect, for summary judgment on the petition, concluding, among other things, that triable issues of fact existed regarding the estate's financial ability to maintain the policy and whether James sold the policy to Darik in good faith.

Under EPTL 1-2.7, a trustee is a fiduciary who is bound by a duty of undivided and undiluted loyalty to the beneficiaries whose interests the fiduciary is appointed to protect (see EPTL 1-2.7; Birnbaum v Birnbaum, 73 NY2d 461, 466 [1989]; Matter of Mankin, 88 AD3d 717, 718 [2011]; Boles v Lanham, 55 AD3d 647, 648 [2008]).

Notwithstanding that "the essential ingredient of a trust is the accountability of the trustee . . . exculpatory provisions . . . are valid . . . so long as there is some accountability, at least to the settlor" (Bauer v Bauernschmidt, 187 AD2d 477, 478-479 [1992] [citations omitted]; see Boles v Lanham, 55 AD3d at 648; O'Hayer v de St. Aubin, 30 AD2d 419, 423 [1968]). Accordingly, "[n]o matter how broad the [exculpatory] provision may be, the trustee is liable if he commits a breach of trust in

bad faith or intentionally or with reckless indifference to the interests of the beneficiaries, or if he has personally profited through a breach of trust" (*O'Hayer v de St. Aubin*, 30 AD2d at 423 [internal quotation marks omitted]; *see Matter of Mankin*, 88 AD3d at 718; *Boles v Lanham*, 55 AD3d at 648).

The exculpatory clause authorized James to, inter alia, transact with any entity in which he had an interest on such terms and conditions as, "in [his] sole and nonreviewable discretion, [he] shall deem advisable." Accordingly, James's conduct in this matter was not subject to an undivided duty of loyalty (*see Birnbaum v Birnbaum*, 73 NY2d at 466; *Matter of Mankin*, 88 AD3d at 718; *Boles v Lanham*, 55 AD3d at 648); rather, the question is whether James breached his duty of good faith or acted with reckless indifference to the appellants' interests in selling the policy to Darik against the appellants' express wishes (*see Matter of Mankin*, 88 AD3d at 718; *Boles v Lanham*, 55 AD3d at 648; *O'Hayer v de St. Aubin*, 30 AD2d at 423).

The appellants made a prima facie showing of their entitlement to judgment as a matter of law based on the account, which indicated that the estate had sufficient assets to maintain the policy in accordance with the appellants' wishes, while James nonetheless proceeded to sell the policy to Darik, in which James held a 42.8% interest (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). The opposition papers, including the affirmation by the attorney for Darik, raised triable issues of fact, inter alia, as to whether the sale of the policy constituted a breach of James's duty of good faith. Accordingly, the Surrogate's Court properly denied that branch of the appellants' motion which was, in effect, for summary judgment on the petition (*see* CPLR 3212; *Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Matter of Siegel*, 90 AD3d 937 [2011]). Rivera, J.P., Florio, Chambers and Cohen, JJ., concur.