OPINION OF THE COURT
Seymour Schwartz, J.
Petitioner moves pursuant to CPLR 7503 (subd [b]) to permanently stay the arbitration proceeding instituted against it by respondent.
The underlying dispute involves a contract for the sale of 200 metric tons of coffee entered into between petitioner as seller and respondent as buyer on November 16,1977. The contract contained a broad arbitration clause. Bills of lading representing ownership of the coffee were concurrently transferred by petitioner to respondent, and respondent paid petitioner $641,631.78. Respondent thereafter resold the bills to a third party for $658,340.03.
The bills of lading transferred to respondent turned out to contain forged signatures and thus were ineffective in transferring ownership of the coffee. As a result, the third party instituted an action against respondent which was settled in 1981 after respondent paid the third party $700,000. On November 17, 1983, respondent commenced *903 arbitration proceedings pursuant to the arbitration clause in its contract with petitioner.
Petitioner contends that arbitration should be permanently stayed because respondent’s claim is barred by the four-year Statute of Limitations contained in subdivision (1) of section 2-725 of the Uniform Commercial Code. Respondent argues that its claim is not for breach of a sales contract but for fraud and breach of warranties based upon the rights of a transferee of bills of lading. (Uniform Commercial Code, § 7-507.) The claim for fraud, according to respondent, is governed by the six-year statute contained in CPLR 213 (subd 8). Since article 7 of the Uniform Commercial Code contains no Statute of Limitations, respondent argues that its breach of warranties claim is likewise governed by the six-year statute in CPLR 213.
CPLR 7502 (subd [b]) requires the court to determine whether claims subject to arbitration are time barred. (Matter of Andresen & Co. v Shepard, 45 AD2d 578.) The issue here is whether the four-year Statute of Limitations set forth in subdivision (1) of section 2-725 of the Uniform Commercial Code applies to the claims respondent seeks to submit to arbitration.
Respondent urges that the court consider the sale of the bills of lading as separate from the contract to sell the goods. The transaction, however, cannot be divided up in that manner. A bill of lading is a “document evidencing the receipt of goods for shipment”. (Uniform Commercial Code, § 1-201, subd [6]). Unlike a negotiable instrument, a bill of lading cannot be transferred without also transferring ownership to goods.
Where purchase money for goods is advanced by a third party, an action to recover a balance due may be removed from article 2 of the Uniform Commercial Code, (see Harris Trust & Sav. Bank v McCray, 21 Ill App 3d 605.) There, the issuer of a bank credit card sued the cardholder to recover moneys due on the credit card account for the purchase of goods. The bank was considered to be a creditor rather than a merchant and section 2-725 was held to be inapplicable. However, in May Co. v Trusnik (54 Ohio App 2d 71), an installment agreement, executed two years after the *904 original sale, was held to be governed by section 2-725 because the creditor like petitioner was also a party to the sales contract.
O’Neill v Steppat (24 UCC Rep 1214), cited by respondent merely holds that a negotiable instrument executed in connection with a sale of goods is not subject to the article 2 Statute of Limitations. Unlike the installment agreement in May Co. v Trusnik (supra) and the bills of lading here, a negotiable instrument is transferable independent of the underlying obligation. Moreover, section 3-802 (subd [1], par [b]) of the Uniform Commercial Code provides that if a negotiable instrument is dishonored, an “action may be maintained on either the instrument or the obligation”. There is no similar provision in article 7.
The contract for sale here cannot be divorced from the bills of lading. Since article 7 makes no mention of any Statute of Limitations, the statute in article 2, which applies to contracts for the sale of goods, must also apply to bills of lading evidencing the sale of goods between merchants where the parties to the bills of lading and the contract of sale are the same. Bills of lading, representing no more than ownership of goods in transit, may not be employed by parties to contracts for the sale of goods to extend the four-year Statute of Limitations in article 2.
Accordingly, arbitration concerning respondent’s claim for breach of warranties based upon the rights of transferees of bills of lading is permanently stayed.
Respondent’s claim for fraud, however, is not barred by the four-year Statute of Limitations in article 2. Rather, the six-year statute for fraud (CPLR 213, subd 8) applies. The allegation that petitioner knew the signatures on the bills of lading were forged states a claim for fraud in the inducement. It goes to the validity of the bills of lading themselves and occurred prior, rather than subsequent, to the execution of the contract. The fraud alleged here is extraneous to the contract for the sale of coffee as opposed to a fraudulent nonperformance of the contract itself. (Triangle Underwriters v Honeywell, Inc., 604 F2d 737.)
The application for a stay of arbitration is granted except as to respondent’s claim for fraud in the inducement. The arbitrator shall determine whether the fraud alleged by *905 respondent was committed by petitioner and the six-year Statute of Limitations shall apply to that claim. If no fraud is found by the arbitrator, then the case against petitioner shall be dismissed.