Powers Mercantile Corp., Respondent, v Maurice Feinberg et al., Appellants.

First Department, June 11, 1985

APPEARANCES OF COUNSEL

*Frederick P. Schaffer* of counsel (*Daniel A. Pollack* with him on the brief; *Pollack & Kaminsky,* attorneys), for appellants.

*Fred Kaplan, Ronald M. Neumann* and *Michael P. Rumore* of counsel (*Vincenti & Schickler,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

From 1962 until January 31, 1973, plaintiff's predecessor, CITC Industries, Inc., a New York corporation engaged in the manufacture and sale of footwear, employed William Manowitz who, by virtue of various managerial positions he held, was able to acquire confidential information concerning CITC's business. According to plaintiff, during the latter part of 1972 and through January 31, 1973, Manowitz entered into a conspiracy with Maurice and Frank Feinberg to conceal a multimillion dollar order from Roller Derby, a major customer of CITC, and divert it to Manow International, a recently formed corporation controlled by Manowitz and the Feinbergs. After inducing Roller Derby to place its impending order with the new corporation, Manowitz resigned from CITC and became president of Manow, which, from the time of its incorporation, has competed with CITC and its successor, plaintiff.

In 1975, CITC commenced an action against Manowitz and Manow,[1] alleging, *inter alia,* breach of contract and breach of fiduciary obligations, and seeking damages for lost profits from the Roller Derby order and any subsequent Roller Derby orders, as well as from any other customer accounts diverted by Manowitz. At his deposition in that action, Manowitz testified that when he discussed going into business with the Feinbergs, it was agreed that they would finance the new business but would not take an active role in its operation. Manowitz denied that there had been any discussion of specific orders or anticipated sales to any particular customer. Both Feinbergs were deposed in 1979 and confirmed Manowitz' testimony. They specifically denied any knowledge that Manowitz had procured the Roller Derby order for the new corporation.

In December 1983, plaintiff's principal, Jonas Senter, learned from David Liner, a long-time friend of Manowitz, that at a January 1973 meeting, Maurice Feinberg had told him that the Roller Derby order was "the key for [us] to go into business with

---

1. That action is still pending except that it has been stayed against Manow by reason of its filing of a petition pursuant to chapter 11 of the Bankruptcy Act.

Mr. Manowitz and that if Manowitz could confirm * * * that the order placed by Roller Derby Skate Corp. with CITC during the January 1973 shoe show, was instead placed with the new company that Manowitz was creating, [we] would finance the new enterprise." Around the same time David Tye, a former CITC employee, told Senter that early in 1973 Manowitz admitted to him that he was starting his own business with the financial backing of the Feinbergs, who would not go into business with him unless he obtained the Roller Derby account.

Thereafter, on April 12, 1984, plaintiff, as CITC's successor, commenced this action against the Feinbergs seeking damages in excess of $15,000,000 for lost profits. The complaint alleges that the Feinbergs conspired with Manowitz in the latter part of 1972 and through January 31, 1973 to defraud CITC by misappropriating the Roller Derby order. In a second cause of action, it alleges that the Feinbergs conspired with Manowitz to defraud CITC by making false statements in the Manowitz action in order to conceal their role in the conspiracy to misappropriate the Roller Derby order.

After joinder of issue, the Feinbergs moved for summary judgment dismissing the complaint on the ground that the first cause of action was time barred while the second failed to state a cause of action. Special Term denied the motion, finding issues of fact with respect to plaintiff's claim that the Feinbergs were equitably estopped from asserting the Statute of Limitations and as to the alleged conspiracy to conceal their participation in the diversion of the Roller Derby order, upon which the estoppel claim is based. The Feinbergs appeal. We reverse, grant the motion and dismiss the complaint.

In an effort to circumvent the Statute of Limitations time bar on its 11-year-old claim for the misappropriation of the Roller Derby order plaintiff has cast its complaint in fraud. It thus contends that the fraud discovery rule — two years from the date of discovery of the fraud (CPLR 203 [f]) — should apply, rather than the three-year Statute of Limitations applicable to an action to recover damages for injury to property (CPLR 214 [4]).

■ Even assuming that the first cause of action, which alleges a conspiracy between the Feinbergs and Manowitz to defraud CITC by misappropriating the Roller Derby order, states a valid claim for fraud,[2] it cannot survive the proper application of the

---

**2.** In support of this claim plaintiff alleges that Manowitz owed a fiduciary duty to CITC, and that the Feinbergs agreed with Manowitz to conceal the Roller Derby order misappropriation. It is doubtful that these allegations even state a valid claim for fraud since it is nowhere alleged that the Feinbergs had

Statute of Limitations since the essence of this cause of action is the misappropriation of a business opportunity. Generally, "the choice of applicable Statute of Limitations is properly related to the remedy rather than to the theory of liability." (*Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389, 394-395; *also, Matter of Paver & Wildfoerster* [*Catholic High School Assn.*], 38 NY2d 669, 672). It is also a well-established principle of law that where an allegation of fraud is not essential to the cause of action pleaded except as an answer to an anticipated defense of Statute of Limitations, courts "look for the reality, and the essence of the action and not its mere name." (*Brick v Cohn-Hall-Marx Co.,* 276 NY 259, 264.)

In *Brick* (*supra*), the plaintiffs sought the recovery of royalties allegedly due under a contract. To avoid the contract action Statute of Limitations, they cast their claims in fraud, alleging that the defendant's books contained fraudulent entries; that the defendant falsely represented to the plaintiffs that it had paid all that was due under the contract and had accounted for all the sales that were made; and that the plaintiffs did not discover the falsity of these facts until February of 1936 (*supra,* at p 263). Notwithstanding these allegations, the Court of Appeals held that the claim was governed by the Statute of Limitations applicable to contract actions: "The only purpose which serves the plaintiffs in pleading the fraud is to avoid the Statute of Limitations; that is to say, the plaintiffs, within the six years, would have had the same right to recover with or without the allegations of the fraud. The fraud element is added merely to take the case without the six-year statute. This does not change the nature of the action, however, in our judgment, from an action upon contract to an action upon fraud within the meaning and purpose of this Statute of Limitations" (*supra,* at p 264).

Thus, courts will not apply the fraud Statute of Limitations if the fraud allegation is only incidental to the claim asserted; otherwise, fraud would be used as a means to litigate stale claims. (*See,* 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 213.25, at 2-266.) Where the alleged fraud is merely "the means of accomplishing the breach and add[s] nothing to the causes of action", the Statute of Limitations applicable to fraud claims will not control. (*Iandoli v Asiatic Petroleum Corp.,* 57 AD2d 815, 816, *lv dismissed* 42 NY2d 1011.)

The same rationale has been applied to complaints that alleged fraud but in essence claimed waste or diversion of assets or

---

a fiduciary relationship with CITC. In the absence of such relationship, mere silence does not constitute actionable fraud. (*Amend v Hurley,* 293 NY 587, 596; *Moser v Spizzirro,* 31 AD2d 537, *affd* 25 NY2d 941.)

other injury to property. For example, in *Pollack v Warner Bros. Pictures* (266 App Div 118), the complaint alleged that the defendants had wasted corporate assets and that they had concealed the wrongful acts which constituted such waste. This court held that "[t]hough the second cause of action is framed in fraud, in essence it likewise is an action for waste of corporate assets [and] the Statute of Limitations [applicable to actions] to recover damages for injury to corporate property applies" (*supra,* at pp 119-120). Similarly, in *Myer v Myer* (271 App Div 465), the three-year property damage, rather than the fraud, Statute of Limitations was held to be applicable since "actual fraud is not the gravamen of the complaint insofar as it is attacked upon these motions. The claims are essentially for waste and diversion of assets" (*supra,* at p 476; *see also, Cohen v Manson,* 42 AD2d 555).

In the instant matter the allegations of fraud are ancillary to the claim that the Feinbergs participated in the misappropriation of the Roller Derby order. At most, they represent the means of accomplishing the alleged misappropriation and, as such, are only an incident of that wrong. By the facile addition of allegations of conspiracy and concealment, plaintiff cannot change the fact that the nub of the claim is misappropriation. Indeed, without the alleged misappropriation plaintiff would have no claim at all. Thus, since the first cause of action is essentially for misappropriation of a business opportunity, it is governed by the three-year Statute of Limitations. Inasmuch as the alleged misappropriation occurred in January 1973, at the very latest, the first cause of action was time barred by February 1976 — more than eight years before the commencement of this action and more than three years before the Feinbergs' depositions were taken in the Manowitz action.

Moreover, the assertion of the Statute of Limitations is not, as plaintiff contends, precluded by equitable estoppel since the misappropriation claim was already time barred long before the Feinbergs gave the allegedly false testimony upon which the estoppel argument is based. The doctrine of equitable estoppel "bar[s] the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing * * * which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." (*General Stencils v Chiappa,* 18 NY2d 125, 128.) The rule was reiterated in *Simcuski v Saeli* (44 NY2d 442, 448-449) wherein the court noted, "[A] defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud,

misrepresentations or deception to refrain from filing a timely action."

As the cases make clear, the doctrine of equitable estoppel requires proof that the defendant made an actual misrepresentation or committed some other affirmative wrongdoing (*see, Gold v City of New York,* 80 AD2d 138, 144),[3] that the plaintiff relied on the misrepresentation, and that the reliance caused him to delay bringing a timely action. (*Five Platters v Williams,* 81 AD2d 534; *Locafrance U. S. Corp. v Daley-Hodkin Corp.,* 60 AD2d 804.) Thus, plaintiff's claim of equitable estoppel fails since it is based upon a deposition taken at a time when the Statute of Limitations had already run on its misappropriation claim.

The second cause of action alleges that the Feinbergs conspired with Manowitz to defraud CITC and to obstruct justice by preventing CITC from discovering their complicity in the misappropriation of the Roller Derby order. In essence, it is an attempt to plead a fraud claim based on the same allegations upon which the equitable estoppel claim is based — the Feinbergs' allegedly false deposition testimony.

Recognizing that the Feinbergs testified after the Statute of Limitations had run on the misappropriation claim, Special Term, citing *De Vito v New York Cent. Sys.* (22 AD2d 600), denied summary judgment on the ground that the second cause of action rested not only on a claim of false testimony but also on an "alleged conspiracy to cover up the Feinbergs' participation that involved a pattern of stonewalling" by the Feinbergs, Manowitz, and others associated with them in the shoe business. This court, in *De Vito,* however, although sustaining a cause of action based upon the defendant's affirmative misrepresentations which had induced the plaintiff to forego the prosecution of a negligence claim within the application period of limitations, noted, "[o]ne against whom a claim exists is not under a duty to inform the claimant thereof, and the failure to so inform does not constitute fraud" (*supra,* at p 601).

Thus, the complaint's allegation of a conspiracy "to conceal the truth" is insufficient, as a matter of law, to sustain a valid claim of fraud. Consequently, the timeliness of the second cause of action must stand or fall solely on the allegation that the

---

**3.** In the absence of an actual misrepresentation, even active concealment of the true facts by a defendant will not equitably estop assertion of the Statute of Limitations unless "there was a fiduciary relationship which gave defendant an obligation to inform plaintiff of facts underlying the claim". (*Jordan v Ford Motor Co.,* 73 AD2d 422, 424.)

Feinbergs gave false deposition testimony. As with the equitable estoppel claim, plaintiff cannot prove that it relied on the alleged misrepresentation to its detriment, since the Statute of Limitations had already run. As a matter of law, therefore, the claim must fail, since plaintiff cannot show reliance, and concomitant injury. "To give rise, under any circumstances, to a cause of action, either in law or equity, reliance on the false representation must result in injury." (*Sager v Friedman,* 270 NY 472, 479.) Thus, summary judgment should have been granted.

Accordingly, the order of the Supreme Court, New York County (Shorter, J.), entered December 12, 1984, denying defendants' motion for summary judgment dismissing the complaint, should be reversed, on the law, with costs and disbursements, and the motion granted.

KUPFERMAN, P. J., FEIN, MILONAS and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on December 12, 1984, unanimously reversed, on the law, and the motion for summary judgment granted. Appellants shall recover of respondent $75 costs and disbursements of this appeal.