**M/S SHIRAZ IMPEX, Plaintiff,**

v.

**BEECH–NUT NUTRITION CORP., Defendant.**

**BEECH–NUT NUTRITION CORP., Third–Party Plaintiff,**

v.

**MILUPA CORPORATION, Third–Party Defendant.**

**No. 88 Civ. 3520 (KTD).**

United States District Court, S.D. New York.

June 22, 1989.

Irving Levine, New York City, for plaintiff.

Lester Schwab Katz & Dwyer, New York City, for defendant, Beech–Nut Nutrition Corp. (Steven B. Prystowsky and Stuart W. Axe, of counsel).

Walter, Conston, Alexander & Green, P.C., New York City, for third-party defendant, Milupa Co., a Div. of Altana Inc. (Alan Kanzer, of counsel).

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff M/S Shiraz Impex ("Shiraz"), a Pakistani corporation, brings this diversity action to recover damages caused by the presence of insects and pests in baby cereal purchased from defendant and third-party plaintiff Beech–Nut Nutrition Corp. ("Beech–Nut"), a Delaware corporation. Beech–Nut, in turn, seeks indemnification from its supplier, third-party defendant Milupa Corp. ("Milupa"), a division of a New York corporation. Currently pending are Milupa's motion pursuant to Fed.R.Civ.P. 9(b), 12(b), and 14(a) to dismiss Shiraz' complaint, Milupa's motion pursuant to Fed.R. Civ.P. 12(b) and 56(b) to dismiss Beech–Nut's complaint, and Beech–Nut's motion pursuant to Fed.R.Civ.P. 56 to dismiss Shiraz' complaint.

Subsequent to the filing of Milupa's motions, Shiraz and Beech–Nut each amended their complaints.[1] Although permission to amend the complaints was not obtained as required by Fed.R.Civ.P. 15(a), the parties agree to proceed with the above motions on the amended complaints.

## FACTS

This dispute involves two separate agreements to supply dry cereal. The first agreement provides that Milupa will supply all of Beech–Nut's cereal needs on an ongoing basis. Under that written agreement, Milupa is responsible for manufacturing, testing, packaging, and shipping the cereal to Beech–Nut once a month. The agreement specifically addresses the extent of Milupa's product warranties and indemnification liability. The second agreement consists of Shiraz' written and oral purchase orders to buy the cereal, packaged for resale, from Beech–Nut. Under the latter agreement Beech–Nut is responsible for delivering the packaged cereal to Karachi, Pakistan, on "C & F terms" (cost and freight to Karachi). The facts set forth in the complaint and the affidavits submitted on the various motions at bar regarding alleged breaches of these agreements appear to be as follows.

Beech–Nut shipped cartons of cereal to Pakistan in 1984. Each package is

---

1. Shiraz' amended complaint does not appear to have been filed with the court. It is, however, attached as Exhibit E to the Affidavit of T. Jaffer in Opposition to Milupa's Motion to Dismiss and for Summary Judgment and appears to have been received and considered by all parties.

stamped with the legend "Better When Used By March 1986." Affidavit of Richard D. Walters ("Walters Affid."), ¶ 5. An additional document titled "Label Declaration" [2] indicates that the cartons contained a product that would be "[b]etter when used by 2 years after pack-date." Affidavit of T. Jaffer in Opposition to Milupa's Motion to Dismiss and for Summary Judgment ("Jaffer Affid."), Exhs. A and B. The documents as submitted do not indicate the "pack-date" of the cartons that they describe.

The precise date that the cereal arrived in Pakistan is in dispute. Shiraz' Amended Complaint alleges that the purchase agreement with Beech–Nut involved 7,473 cartons of cereal. Amended Complaint, ¶ 7. It further alleges that the cereal arrived in Pakistan "sometime after March 26, 1984." Amended Complaint, ¶ 8. This shipment was then stored by the Pakistan Government for fumigation. It was released to Shiraz on May 21, 1984.

In response to the motions at bar, however, the affidavit of Shiraz' President, Tanvir Jaffer, alleges that 7,473 cartons constituted "the first shipment" and that that shipment arrived in Karachi on May 10, 1984. Jaffer Affid., ¶ 4. This affidavit goes on to allege that a second shipment of 600 cartons was received at Shiraz' warehouse "on or about July 17, 1984." Jaffer Affid., ¶ 5. Shiraz presents no documentation to support these allegations.

Beech–Nut maintains that there was a single shipment of 7,473 cartons that arrived in Pakistan on or before May 10, 1984. Walters Affid., ¶ 4. In support of this assertion, Beech–Nut submits the following: the Documentary Credit entered into by Shiraz that specifically indicates that partial shipments are not allowed, shipping documents that indicate the shipment of 5 containers, each said to contain 1,495 cases of baby food (a total of 7,475 cartons), and a telex from Shiraz to Beech–Nut advising that the cereal arrived at the port of Karachi on May 10, 1984, and arrived at Shiraz' warehouse on May 23, 1984. Beech–Nut Nutrition Corp.'s Notice of Motion for Summary Judgment, Exhs. A, B at 11, and E.

Soon after receiving the cereal cartons, Shiraz distributed them to various retailers for sale to the public. Within one month, purchasers began complaining to Shiraz that the cereal contained insects and pests. An investigation determined that the bugs were not indigenous to Pakistan. Shiraz has since stored the infested cereal in a Pakistan warehouse.

Shiraz first attempted, in a "letter writing campaign," to obtain replacement cereal from Beech–Nut. Jaffer Affid., ¶ 9–10. It was apparently under the impression that there is a "custom and usage" in the food trade that defective food can be returned to the seller at any time prior to the date stamped on the package. Jaffer Affid., ¶ 12. See also Affidavit of Irving Levine, Esq., at 2.

On November 4, 1984, Shiraz telexed Beech–Nut and indicated concern over a problem with insects in the cereal boxes. Jaffer Affid., Exh. C. Beech–Nut telexed in response expressing confusion over Shiraz' telex, not sure whether or not insects were a potential problem or had already been found in the cereal. Jaffer Affid., Exh. D. In December 1984, Monalisa Traders Ltd. of Pakistan returned to Beech–Nut some of the cereal Beech–Nut had shipped to Pakistan under its agreement with Shiraz. As a result of damage to the packaging of that cereal during reshipment, Beech–Nut waited until March 4, 1985, when it received a second reshipment, to examine the cereal.

Beech–Nut was served by regular mail with Shiraz' initial complaint in this action on May 23, 1988. Beech–Nut then awaited review and disclaimer of coverage for the claim by its insurer, hired counsel, and finally notified Milupa of the action by letter dated August 1, 1988. On August 4, 1988, Beech–Nut served Milupa with its third-party summons and complaint.

---

**2.** The "Label Declarations" as submitted by Shiraz are marked as "Page: 1 of 3." No indication is given regarding the source of these documents, the time they were received by Shiraz, or the remainder of their contents.

## DISCUSSION

Shiraz' amended complaint alleges five separate causes of action against Beech–Nut. Essentially, the actions claim: (1) breach of warranties stemming from a sales contract, (2) negligence in compliance with the sales contract, (3) injury to business reputation, (4) fraud in compliance with the sales contract, and (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1982 & Supp. V 1987). Both Beech–Nut and Milupa move to dismiss each of these claims on the ground that they are barred by the applicable statutes of limitations.

■■■ I note initially that Shiraz' claims for breach of warranty, fraud, and negligence are each subject to the limitations period provided for contract claims under New York law. The latter two causes of action must be analyzed for statute of limitations purposes according to " 'the reality, and the essence of the action and not its mere name.' " *Powers Merc. Corp. v. Feinberg,* 109 A.D.2d 117, 120, 490 N.Y. S.2d 190, 192 (1st Dep't 1985) (quoting *Brick v. Cohn–Hall–Marx Co.,* 276 N.Y. 259, 264, 11 N.E.2d 902, 904 (1937)), *aff'd,* 67 N.Y.2d 981, 494 N.E.2d 106, 502 N.Y. S.2d 1001 (1986). *See also Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737 (2d Cir.1979). Under such an analysis, allegations of fraud and negligence that relate to nonperformance of the contract rather than fraud extraneous to the contract, such as fraudulent inducement to enter the contract, are subject to the limitations period for contract claims. *Globekirk, Ltd. v. E.D. & F Man 'Coffee' Ltd.,* 123 Misc.2d 902, 474 N.Y.S.2d 388 (Sup.Ct.N.Y.Cty.1984). Thus, because the allegations underlying Shiraz' fraud and negligence claims essentially involve violations of an existing contract, rather than conduct prior to the creation of the contract, those claims are subject to the limitations period for contract claims.

Under New York law "a cause of action for breach of a contract of sale must be commenced within four years after it accrues. The action accrues when the breach occurs and, in the absence of a warranty explicitly extending to future performance, a breach occurs when tender of delivery is made." *Heller v. U.S. Suzuki Motor Corp.,* 64 N.Y.2d 407, 410, 477 N.E.2d 434, 435, 488 N.Y.S.2d 132, 133 (1985) (citing N.Y.U.C.C. § 2–725 (McKinney 1964)). *See also Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 350 (2d Cir.1986).

> "Tender of delivery" occurs when the seller puts "conforming goods at the buyer's disposition" and involves "such performance by the tendering party as puts the other party in default if he fails to proceed in some manner." Tender of delivery is further defined as "such performance by the tendering party as puts the other party in default if he fails to proceed in some manner."

*City of New York v. Pullman Inc.,* 662 F.2d 910, 919 (2d Cir.1981) (quoting, respectively, N.Y.U.C.C. § 2–503(1) (McKinney 1964) and Official Comment to N.Y.U.C.C. § 2–503 (McKinney 1964)), *cert. denied sub nom. Rockwell International Corp. v. New York,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982).

■■■ The parties appear to agree that all or most of the cereal arrived at the Port of Karachi on May 10, 1984. The papers submitted on these motions, however, do not indicate whether storage and fumigation by the Pakistan Government was a prerequisite to entry of the goods into Pakistan and therefore necessary before the cereal would "conform" to the contract terms. *See Pullman Inc.,* 662 F.2d at 919. If such storage is a customs requirement anticipated by the contract of sale, then delivery would not be complete until customs released the cereal to Shiraz. *See* N.Y.U. C.C. § 2–509(1)(b) (McKinney 1964) (indicating that when a contract for sale of goods authorizes seller to ship goods by carrier and requires the goods to be delivered at a particular destination, tender occurs at the time that the buyer is able to take delivery). *See generally* N.Y.U.C.C. § 2–320 (McKinney 1964) (defining terms "C & F" and "CIF").

The papers submitted also do not indicate the date that the Pakistan Government released the cereal to Shiraz. Although there is some evidence that Shiraz received the cereal at its warehouse on May 23, 1984, a relevant and material issue of fact remains regarding whether that was the date that the cereal became available such that Shiraz was able to obtain possession.

Because Shiraz has submitted incomplete and inconsistent accounts regarding the receipt of the cereal, the limited factual issues regarding the relevant date of tender of delivery of conforming goods for statute of limitations purposes cannot be resolved at this time. However, such questions are readily amenable to resolution in a short hearing pursuant to Fed.R.Civ.P. 43(e). I therefore must reserve decision on the motions to dismiss on statutes of limitations grounds pending such a hearing.

Also appropriate for resolution in a Rule 43(e) hearing is the limited question of whether Shiraz has any evidence to support its claims, made in response to the motions at bar although not alleged in the complaint, that the packaging legend regarding a two-year shelf life constitute a warranty of future performance that extends the four-year limitations period. *See Kurtz v. Sanford Fire Apparatus Corp.*, 147 A.D. 2d 952, 537 N.Y.S.2d 407, 408 (4th Dep't 1989). Such an extension of the limitations period has been found when the warranty was made a part of the purchase contract or there is proof that the purchaser relied on the representation. *See Parzek v. New England Log Homes, Inc.*, 92 A.D.2d 954, 460 N.Y.S.2d 698 (3d Dep't 1983); *Wiltshire v. A.J. Robins Co., Inc.*, 88 A.D.2d 1097, 453 N.Y.S.2d 72 (3d Dep't 1982); *Rochester Welding Supply Corp. v. Burrough's Corp.*, 78 A.D.2d 983, 433 N.Y.S.2d 888 (4th Dep't 1980). At the hearing the burden is on Shiraz to come forward with some evidence that demonstrates that such a warranty exists.[3]

3. To further focus the issues at that hearing, however, I note now that Shiraz' reliance on the telex from Beech–Nut which states that
"the products have a long shelf life. Expiration is not until February 1986"

For the foregoing reasons, a hearing pursuant to Rule 43(e) is hereby scheduled for July 17, 1989, at 10:00 a.m. in courtroom 705. Because resolution of those limitations issues will go far toward resolving the remaining issues and motions, the final resolution of all motions currently pending before me will await the outcome of that hearing.

SO ORDERED.

is insufficent to meet that burden. That telex was sent after the contract was entered into and as such is not sufficient to establish a warranty of future performance.