**WHITNEY HOLDINGS, LTD., Plaintiff,**

v.

**Sergei GIVOTOVSKY a/k/a Sergei I. Givetovsky, Defendant.**

**No. 96 CIV. 8388(LAK).**

United States District Court,
S.D. New York.

Dec. 24, 1997.

Philip M. Smith, Whitman, Breed, Abbott & Morgan, New York, NY, for Plaintiff.

Robert A. Giacovas, Michael Conway, Lazare, Potter & Giacovas, New York, NY, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Whitney Holdings, Inc. brings suit against its former director, general counsel and founding shareholder, Sergei Givotovsky, for breach of fiduciary duty and for fraud. Simply put, Whitney alleges that Givotovsky personally performed services for and received compensation from a Whitney client in violation of his duty of loyalty to the firm. The fact that Givotovsky failed to disclose his individual arrangement with the client, as his fiduciary status allegedly required, forms the basis of Whitney's fraud claim.

Givotovsky moves for summary judgment. He asserts that the Court lacks subject matter jurisdiction because the requisite amount in controversy is lacking, no admissible evidence exists to support the complaint, and the statute of limitations bars the action.

### Facts

Plaintiff Whitney Holdings Inc. ("Whitney"), a small merchant and investment banking firm, was founded in 1984 by five shareholders, among them defendant Sergei Givotovsky.[1] Until his resignation, Givotovsky owned one-sixth of Whitney's outstanding shares and served as a director of the firm, as well as its secretary and general counsel.[2]

---

1. Pl. Mem. 2; Whitney Decl. ¶¶ 2, 3.

2. Whitney Decl. ¶ 3.

Whitney's business includes providing financial and consulting services to clients and making equity investments in them. During 1987 and 1988, Whitney solicited the business of Audre Recognition System, Inc. ("Audre"), a computer imaging company.[3] Efforts by Givotovsky and others to induce Audre to retain Whitney for financial consulting services ultimately failed. However, based in part on Givotovsky's recommendation, Whitney decided in March 1988 to make a $23,000 equity investment in Audre.[4]

On November 30, 1988, Givotovsky resigned from Whitney.[5] On the same day, and unbeknownst to Whitney, Audre confirmed by letter its offer for Givotovsky to become a director of Audre.[6] The letter confirmed also Audre's agreement to pay Givotovsky $5,000 in the form of a note in consideration for *past* consulting services and its agreement to accept the note in exchange for 300,000 shares of Audre common stock.[7] By letter dated December 14, 1988, Givotovsky confirmed the agreement with Audre.[8]

In 1991, Whitney sold its Audre investment at approximately a tenfold profit.[9] Audre stock continued to appreciate substantially after that sale.

Givotovsky sued Whitney in April 1994 in New York State Supreme Court for compensation he claimed was due him for identifying the Audre investment. At some point during the course of that litigation, Givotovsky produced a copy of Audre's November 30, 1988 letter.[10] Based on the letter, Whitney applied for leave to amend its answer and assert a claim against Givotovsky for diversion of a corporate opportunity. Givotovsky opposed the amendment, and Whitney withdrew its request, stating that it would pursue the matter in a separate lawsuit.[11]

At the conclusion of the bench trial, Justice Charles Ramos ruled in favor of Whitney on Givotovsky's claim for compensation with respect to Whitney's Audre investment. He rejected Givotovsky's contract claim, finding that there was no agreement to pay him compensation.[12] Additionally, Justice Ramos rejected Givotovsky's *quantum meruit* claim, by which Givotovsky asserted that he was entitled to be paid the value of his services (a) as a finder, and (b) for services rendered. The court held that there had been no agreement to pay Givotovsky a finder's fee and, it appears, that Givotovsky rendered no services other than as a finder.[13] In the course of his remarks, Justice Ramos made clear his view that Givotovsky had breached his fiduciary duty by diverting an opportunity to provide consulting services to Audre.[14]

On November 8, 1996, Whitney brought this action against Givotovsky asserting two causes of action. First, Whitney claims a breach of fiduciary duty in that Givotovsky (a) diverted the alleged corporate opportunity to perform consulting services for Audre, and (b) failed to disclose the opportunity to Whitney. Second, Whitney alleges fraud in that Givotovsky failed to disclose his compensation arrangement with Audre.

## Discussion

### Subject Matter Jurisdiction

Defendant alleges that this Court lacks subject matter jurisdiction because plaintiff can prove damages of only $5,000, well below the $75,000 required by 28 U.S.C. § 1332.[15] The Court disagrees.

---

3. *Id.* ¶ 6.

4. *Id.*; Rendigs Decl. ¶ 2; Def. Mem. 5.

5. Smith Decl. Ex. J; Whitney Decl. ¶ 8; Rendigs Decl. ¶ 5.

6. Smith Decl. Ex. D; Def. Mem. 14.

7. Def. Mem. 14.

8. Smith Decl. Ex. E; Def. Mem. 18.

9. Rendigs Decl. Ex. B.

10. Def. Mem. 5–6.

11. Smith Decl. Ex. B, at 245–46.

12. *Id.* at 385–86.

13. *Id.* at 386–98.

14. *Id.* at 393.

15. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1)

■ The burden of proving jurisdiction lies with the party asserting it, in this case the plaintiff, but the party at this stage must make only a *prima facie* showing.[16] In the absence of an evidentiary hearing, the Court must "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations."[17] The Court will dismiss for lack of jurisdiction on amount in controversy grounds only if it "appear[s] *to a legal certainty* that the claim is really for less than the jurisdictional amount."[18] In this Circuit, "even where [plaintiff's allegations] leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted."[19] Measured by this capacious standard, plaintiff has amply satisfied its burden.

### Breach of Fiduciary Duty Claim

■ Under New York law, the impression of a constructive trust on the diverted assets is among the remedies for diversion of a corporate opportunity by a fiduciary.[20] The value of the diverted asset is the amount plaintiff would have received but for the defendant's wrongful interference, "including opportunities for profit on the accounts diverted from it through defendant's conduct."[21]

■ In this case, Whitney's allegedly diverted corporate opportunity was the right to receive the note from Audre as compensation for past consulting services and the proceeds the note might have yielded—namely, the 300,000 Audre shares. The fact that Givo-

tovsky never received the 300,000 shares in exchange for the note is immaterial. The relevant consideration is that he had the *right* to receive the shares or some other form of compensation for the consulting services. Moreover, the fact that Givotovsky never received the shares does not mean that Whitney never would have received them or their equivalent. Assuming that Givotovsky was entitled to some form of compensation, measured by the value of the shares, then he arguably held that right in trust for Whitney's benefit. Assuming that the value of the shares could be shown to exceed $75,-000,[22] there is no jurisdictional problem.

### Fraud Claim

■ New York measures damages in fraud cases based on the out-of-pocket loss suffered by plaintiff, but does not include lost profits.[23] The damages "must be the direct, immediate, and proximate result of the fraudulent misrepresentations."[24] Therefore, the appropriate measure of damages on Whitney's fraud claim would be the out-of-pocket loss proximately caused by Givotovsky's allegedly fraudulent failure to disclose his deal with Audre.

■ The complaint suggests that the alleged out-of-pocket loss to Whitney may have been substantial. The out-of-pocket loss to Whitney, if it prevails on this theory, would be at least the value of Audre's obligation to Givotovsky as of November 30, 1988, i.e., the

citizens of different states ...." 28 U.S.C. § 1332(a).

16. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994).

17. *Id.*

18. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (emphasis added).

19. *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir.1982).

20. *Burg v. Horn*, 380 F.2d 897, 899 (2d Cir. 1967); *Wolff v. Wolff*, 67 N.Y.2d 638, 641, 490 N.E.2d 532, 534, 499 N.Y.S.2d 665, 667 (1986); *Blaustein v. Pan American Petroleum & Transport Co.*, 293 N.Y. 281, 300, 56 N.E.2d 705, 713 (1944).

21. *Stoeckel v. Block*, 170 A.D.2d 417, 418, 566 N.Y.S.2d 625, 626 (1st Dep't 1991); *E.W. Bruno Co. v. Friedberg*, 21 A.D.2d 336, 341, 250 N.Y.S.2d 187, 192 (1st Dep't 1964) (quoting *Duane Jones Co. v. Burke*, 306 N.Y. 172, 192, 117 N.E.2d 237, 247 (1954)).

22. *See infra.*

23. *See Allard v. Arthur Andersen & Co.*, 924 F.Supp. 488, 493 (S.D.N.Y.1996); *AFA Protective Systems, Inc. v. American Tel. & Tel. Co.*, 57 N.Y.2d 912, 914, 442 N.E.2d 1268, 1269, 456 N.Y.S.2d 757, 758 (1982) ("the rule in this State is that all elements of profit are excluded from a computation of damages in an action grounded in fraud").

24. *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 307 (2d Cir.1986).

value of a note convertible into 300,000 shares of Audre stock.

The Court surely cannot say to a legal certainty that the note was worth $75,000 or less given its exchangeability for the stock. In fact, on July 31, 1988, Whitney agreed to purchase 40,776 units of an Audre private placement, each unit representing two shares and a warrant, for $23,000. Even assuming that each warrant was worth the same amount as a share, which of course is most unlikely, the per share value on that date would have been about 19 cents.[25] Thus, even on assumptions very favorable to the defendant, the 300,000 shares for which the note was exchangeable were worth at least $57,000, valued as of July 31, 1988, less the amount of the note.[26] Were the value of the warrants less than the value of the Audre shares, or if the value of Audre shares appreciated between July and November, plaintiff well might recover more than $75,000. Accordingly, defendant is not entitled to summary judgment for lack of subject matter jurisdiction.[27]

*Summary Judgment on the Merits*

Givotovsky argues also that he is entitled to summary judgment on the merits because (a) he denies having performed any consulting services for Audre, and thus that he diverted any corporate opportunity, and (b) the only evidence to support the corporate opportunity and fraud claims is hearsay and therefore inadmissible pursuant to Fed. R.Civ.P. 56(e). Whitney does not address these arguments, asserting instead that Givotovsky is collaterally estopped from relitigating the corporate opportunity and fraud issues by virtue of Justice Ramos's decision in the prior state court action.

*Issue Preclusion*

▮▮▮▮▮ Whitney's issue preclusion argument is misguided. Under New York law,[28] an issue will not be precluded in a subsequent action unless "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceedings."[29] Plaintiff has failed to establish either of these requirements.

Although a fair reading of the state court record indicates that Justice Ramos did indeed find Givotovsky had diverted a corporate opportunity and failed to disclose his arrangement with Audre to the Whitney board, neither of these findings was actually or necessarily decided in the requisite sense—i.e., actually before the judge and open to determination when he rendered his decision and necessary to support the result he ultimately reached.

---

25. $23,000 / (40,776 × 3) = 18.8 cents

26. This calculation reflects the adverse effect of any restrictions on the sale of the private placement stock and therefore may understate the value of the 300,000 shares.

27. The fact that the Court dismisses plaintiff's claims on statute of limitations grounds below does not alter the Court's subject matter jurisdiction analysis. A court faced with a motion for summary judgment both for lack of jurisdiction and on the merits must decide the jurisdictional question first, since a disposition on the merits is an exercise of jurisdiction. *See Moreno v. United States*, 965 F.Supp. 521, 523–24 (S.D.N.Y.1997). Therefore, the existence of defenses to the claim which, if valid, would preclude recovery of at least the jurisdictional amount does not affect jurisdiction because it does not go to the presence of a claim of the required size. *E.g., Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir.1994); *Albert v. Apex Fitness, Inc.*, 1997 WL 323899, No. 97 Civ.

1151(LAK), 1997 WL 323899, at *2 (S.D.N.Y. Jun.13, 1997).

28. Because the judgment relied upon is a state court judgment, the effect of the judgment must be determined in accordance with state law. *E.g.*, 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

29. *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Johnson v. Watkins*, 101 F.3d 792 (2d Cir.1996); *ICD Holdings S.A. v. Frankel*, 976 F.Supp. 234, 239 (S.D.N.Y.1997) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987)); *Juan C. v. Cortines*, 89 N.Y.2d 659, 679 N.E.2d 1061, 657 N.Y.S.2d 581 (1997); *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 564 N.E.2d 634, 563 N.Y.S.2d 24 (1990).

738

In the first place, the diversion of corporate opportunity and fraud claims were not properly before the state court. During the trial before Justice Ramos, Whitney proposed amending its answer to assert the corporate opportunity and fraud claims against Givotovsky, but then withdrew its request.[30] A matter cannot *actually* have been litigated, in the requisite sense, if it has not been placed in issue by a proper pleading.[31] Justice Ramos consented to the withdrawal of Whitney's request to amend its answer and later alluded to the future lawsuit. Thus, although Justice Ramos stated that Givotovsky diverted a corporate opportunity, the matter was not actually litigated because the issue was not properly before the court. "Matters excluded from consideration in a prior suit cannot be removed from a later suit."[32] Permitting Whitney to raise a collateral estoppel defense now would be particularly unjust in light of the fact that it was Whitney that withdrew the issue from the prior action, noting that "[w]e're not going to amend our answer.... We are going to ... start another action and deal with that

[corporate opportunity] issue in a plenary action."[33]

Nor were Justice Ramos's remarks necessary to the result in the prior decision. In order to sustain its burden,[34] plaintiff must demonstrate that the issue to be precluded was "material to the first action or proceeding and essential to the judgment therein."[35] In consequence, even if Justice Ramos were regarded as actually having made a determination on the claim now before this Court, subsequent litigation of that issue is not collaterally estopped if his findings were not essential to the result ultimately reached.[36]

Justice Ramos's colloquy with counsel at the end of trial reveals that he rejected Givotovsky's claims without significant regard to the allegations of corporate opportunity and fraud. He rejected Givotovsky's contract claim because he was not persuaded that a contract ever existed.[37] As to the *quantum meruit* claim, Justice Ramos held that there was no agreement to pay a finder's fee and that Givotovsky had done no

30. Smith Decl. Ex. B, at 245–46.

31. See *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456–57, 482 N.E.2d 63, 68, 492 N.Y.S.2d 584, 589 (1985) ("An issue is not actually litigated if ... there has been a ... failure to place a matter in issue by proper pleading."); RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.").

32. *Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 72 A.D.2d 385, 391, 424 N.Y.S.2d 918, 922 (2d Dep't 1980).

33. Smith Decl. Ex. B, at 246. See *Allen v. West-Point–Pepperell, Inc.*, 954 F.Supp. 682 (S.D.N.Y. 1997) (finding it would be "fundamentally unjust" to permit party who withdrew a request to try the actions together later to bar the second action by collateral estoppel).

34. *In re Sokol*, 113 F.3d 303, 306 (2d Cir.1997) ("New York law provides that the party seeking the benefit of collateral estoppel ... has the burden of demonstrating the identity of the issues and the necessity of their having been decided, and the party opposing its use ... has the responsive burden of establishing the absence of

a full and fair opportunity to litigate the issue in the prior action.").

35. *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 490, 478 N.Y.S.2d 823, 826 (1984).

36. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. h (1985) ("If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta ....").

37. Smith Decl. Ex. B, at 385–86 ("The bottom line is I do not find an agreement. There is no specific agreement to pay fees in this case .... You clearly have not sustained your burden of proof by a fair preponderance of the evidence to convince me there was a specific agreement to pay that sum."); see *Polygram Records, Inc. v. Buddy Buie Productions, Inc.*, 520 F.Supp. 248, 252 (S.D.N.Y.1981) ("The plaintiff has the burden of proof to establish by a fair preponderance of the credible evidence the existence of the contract under which it claims to be entitled to injunctive relief and damages."); *Paz v. Singer*, 151 A.D.2d 234, 235, 542 N.Y.S.2d 10, 11 (1st Dep't 1989) ("It is black letter law that the burden of proving the existence, terms and validity

compensable work for Audre.[38] In sum, there is no indication that Justice Ramos's comments on the corporate opportunity and fraud allegations were necessary to his conclusions on the contract and *quantum meruit* claims.

■ Finally, Givotovsky amply has demonstrated that he did not receive a full and fair opportunity to litigate the issues in the prior proceeding.[39] A full and fair opportunity determination "requires consideration of 'the realities of the [prior] litigation,' including the context and other circumstances which . . . may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." [40] Considerations include "the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation . . . and the foreseeability of future litigation." [41]

Even a cursory inspection of the state court record reveals that Givotovsky had little if any opportunity to litigate the corporate opportunity or fraud claims in that proceeding. Whitney did not even attempt to raise the claims until the final day of the trial, obviating any chance Givotovsky might have had to conduct discovery or develop arguments on the issues.[42] Moreover, although Whitney requested leave to amend its answer in order to assert the present claims, Whitney promptly withdrew the request,[43] assert-

ing it would raise the claims in a subsequent action. Certainly Givotovsky was entitled to believe at that point that the corporate opportunity and nondisclosure issues no longer were in the case. Givotovsky had neither the incentive nor the initiative to litigate the issues, the issues were not actually litigated, and future litigation was imminently foreseeable. Given "the context and circumstances surrounding the prior litigation that may have deterred the party from fully litigating the matter," [44] insufficient grounds exist to collaterally estop litigation of the current action.

## Absence of Admissible Evidence

■ Having rejected Whitney's contention that Givotovsky is precluded from contesting liability, the Court turns to Givotovsky's argument that summary judgment is warranted because Whitney has failed to adduce admissible evidence sufficient to demonstrate a genuine issue of material fact.

According to Givotovsky, Whitney's claims rely entirely on documents which are inadmissible hearsay,[45] specifically (i) the November 30, 1988 letter from Audre to Givotovsky, (ii) the December 12, 1988 letter from Givotovsky to Audre, and (iii) an Audre memorandum dated June 11, 1988.[46] Under Givotovsky's theory, Whitney has not identified any admissible evidence which would raise a genuine issue of material fact, and Givotov-

**38.** Smith Decl. Ex. B, at 386–98; *see Kaplan v. Vincent,* 937 F.Supp. 307, 318 (S.D.N.Y.1996) ("To state a claim for quantum meruit: [plaintiff] must establish (1) plaintiff's performance of services in good faith; (2) acceptance of the services by the persons to whom such services were rendered; (3) expectation of compensation; and (4) the reasonable value of such services.").

**39.** *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir. 1995) ("the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding"); *Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 456, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584, 588 (1985).

**40.** *Ryan,* 62 N.Y.2d at 501, 467 N.E.2d at 491, 478 N.Y.S.2d at 827.

**41.** *Id.*

**42.** Smith Decl. Ex. B., at 245.

**43.** *Id.*

**44.** *Conte v. Justice,* 996 F.2d 1398, 1401 (2d Cir.1993).

**45.** Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits opposing summary judgment "set forth such facts as would be admissible in evidence." *See also, e.g., Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 510 (2d Cir.1989) ("[I]n order to survive [defendant's] motion for summary judgment, it was incumbent upon appellants to identify sufficient admissible evidence . . . so as to demonstrate that there existed a genuine issue of material fact."); *Liberty Mutual Ins. Co. v. York Hunter, Inc.,* 945 F.Supp. 742, 746 (S.D.N.Y. 1996).

**46.** Def. Mem. 12–13.

sky therefore is entitled to summary judgment.

Contrary to Givotovsky's assertions, the Court finds that Whitney has identified sufficient admissible evidence to support its claims. While Givotovsky is correct that the November 30, 1988 Audre letter and Audre's June 11, 1990 memorandum are hearsay to the extent they are offered for the truth of the matters asserted, that does not end the inquiry.

First, Givotovsky's own testimony at the state court trial contradicts his present claim that he did not perform any consulting services for Audre.[47]

"Q ... Before you go to the board November '88 were you providing consulting services to Audre?

"A No, nothing they agreed to pay for on behalf of Whitney.

"Q Did you provide consulting services to Audre?

"A Whitney did to try to get them to be a client. *I was the person that would have provided them.* We have discussed possible financing."

* * *

"Q This was consulting services you were rendering on behalf of Whitney Holdings?

"A I was working for Whitney, yes."[48]

This testimony would permit a trier of fact to conclude that Givotovsky performed services for Audre, and the trier would not be obliged to accept his assertion as to whose hat he wore when he did so.

The next step in the analysis is whether there is admissible evidence that Givotovsky was paid for such services. Again, his state

court testimony supplies it. Givotovsky there was shown Audre's November 30, 1988 letter and questioned regarding the statement that the $5,000 note would be issued "in full payment for [his] consulting services to date." He acknowledged that he was to receive the note but denied that it was for past consulting services.[49] He acknowledged also that he was promised 300,000 shares for $5,000 which could be paid in the form of the note.[50] Givotovsky's state trial testimony, all of which would be admissible in evidence in this proceeding,[51] thus admitted all of the material facts set forth in the November 30, 1988 letter except that the note was to be issued for past consulting services. Givotovsky admitted that he rendered consulting services to Audre, although he claimed that he did so for Whitney and that there was no compensation.

Givotovsky's December 14, 1988 letter to Audre supplies the missing link. The letter is clearly an admission by Givotovsky and therefore non-hearsay under Fed.R.Evid. 801(d)(2). The timing and content of the letter certainly permit the inference that it was a response to Audre's November 30, 1988 letter. The November 30, 1988 letter therefore may be admissible not for the truth of the matters asserted, but to show what was said to Givotovsky that elicited the response in the December 14 letter.

Once the November 30, 1988 letter comes in for non-hearsay purposes, plaintiff has demonstrated the existence of genuine issues of material fact sufficient to withstand summary judgment. The November 30 letter contends that the note was issued for past services. Givotovsky's failure to deny that in his own December 14 letter at least arguably is an admission by Givotovsky that the November 30 letter was accurate.[52] Givotovsky

**47.** Def. Mem. 15.

**48.** Smith Decl. Ex. B, at 232–33 (emphasis added).

**49.** *Id.*

**50.** *Id.* at 238–39.

**51.** FED R. EVID. 801(d)(2) ("A statement is not hearsay if ... [t]he statement is offered against a party and is (A) the party's own statement ....").

**52.** *See United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975) (failure to contest an assertion is evidence of admission if natural in the circumstances to object); *Hellenic Lines Ltd. v. Gulf Oil Corp.,* 340 F.2d 398, 401 (2d Cir.1965) (failure to respond to letter in circumstances reasonably calling for reply deemed an admission).

has offered an alternative explanation—that the attribution of the note to past services was inaccurate and the note was actually a tax dodge—but this argument goes to the weight of the evidence, not its admissibility.

In consequence, a genuine issue of material fact exists as to whether the note was issued in exchange for past services rendered by Givotovsky.

### Statute of Limitations

Givotovsky contends also that the action is barred by the statute of limitations. This presents issues of considerable complexity.

#### The Corporate Opportunity Claim

The parties disagree as to the statute of limitations that governs the breach of fiduciary duty claim.[53] Defendant argues that either a three year limitation under CPLR § 214(4) or a six year period under CPLR § 213(7) applies and that the period began to run when the breach occurred, rather than upon its discovery. Thus, defendant contends, the complaint is untimely because it was filed on November 8, 1996, almost eight years after the alleged breach of fiduciary duty, which occurred on or before November 30, 1988. Plaintiff argues that the six year limit of CPLR § 213(7) governs the claim but the claim is nevertheless timely because either (1) the claim did not accrue until plaintiff's discovery of the facts constituting the claim, or (2) defendant is equitably estopped

from raising a statute of limitations defense because of his alleged fraudulent concealment of the claim. As the question whether plaintiff gets the benefit of the discovery rule or equitable estoppel may be affected by which statute of limitations applies, the Court must consider that issue first.

#### The Applicable Statute of Limitations

"Unfortunately, New York law does not provide any single limitations period for breach of fiduciary duty claims."[54] Breach of fiduciary duty claims arise in many different forms, and the applicable statute of limitations under the CPLR may vary depending on the basis for liability, the type of remedy sought or the relationship of the parties.[55] For example, New York courts have held certain breach of fiduciary duty claims to be equitable in nature and therefore governed by CPLR § 213(1) and its six year period.[56] Other suits alleging breach of fiduciary duty, particularly those seeking purely damages, have been construed as alleging "injuries to property" and therefore held to come within CPLR § 214(4) which has a three year prescriptive period.[57]

While these divergent holdings can create uncertainty in some circumstances, one thing at least is quite clear. Where, as here, a corporation sues a former officer, director and shareholder for breach of fiduciary duty, CPLR § 213(7) governs. Section 213(7) provides that "an action by or on behalf of a

---

**53.** Because jurisdiction is premised on diversity, New York law governs the timeliness of plaintiff's complaint. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) (holding federal court sitting in diversity applies conflict of law rules of the state in which it sits); *Stafford v. International Harvester Co.,* 668 F.2d 142, 147 (2d Cir.1981) (same); *see also Insurance Co. of North America v. ABB Power Generation, Inc.,* 925 F.Supp. 1053, 1058 (S.D.N.Y.1996).

**54.** *In re Argo Communications Corp.,* 134 B.R. 776, 787 (S.D.N.Y.1991).

**55.** *Id.* at n. 10.

**56.** *See, e.g., Loengard v. Santa Fe Industries, Inc.,* 70 N.Y.2d 262, 266–67, 514 N.E.2d 113, 115, 519 N.Y.S.2d 801, 803–04 (1987) (finding breach of fiduciary duty claim brought by minority shareholders to recover damages resulting from

freeze-out merger an equitable claim and therefore governed by CPLR § 213(1)).

**57.** *See, e.g., Raul v. American Stock Exchange, Inc.,* No. 95 Civ. 3154(SAS), 1996 WL 381781, at *8–9 (S.D.N.Y. May 2, 1996) (finding breach of fiduciary duty claim brought against stock exchange by a member controlled by CPLR § 214(4) because it was legal in nature); *Salzmann v. Prudential Securities Inc.,* No. 91 Civ. 4253(KTD), 1994 WL 191855, at *7 (S.D.N.Y. May 16, 1994) (holding suit by corporate bondholders against investment advisors for breach of fiduciary duty governed by CPLR § 214(4)); *Geren v. Quantum Chemical Corp.,* 832 F.Supp. 728, 735 (S.D.N.Y.1993) (concluding that a suit by bondholders against corporation and directors alleging breach of fiduciary duty for decreased bond value caused by corporation's special dividend to shareholders was governed by CPLR § 214(4)).

corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting therewith" shall be "commenced within six years." Defendant's contention that the general provision for "injury to property" found in Section 214(4) controls over this more specific period in Section 213(7) is frivolous. The legislative history of Section 213(7) and principles of statutory construction make clear that Section 213(7) supplants all other statutes of limitation potentially applicable to a suit on a corporation's claim against its director, officer or shareholder.

The provision today contained in Section 213(7) originally was enacted in 1942 as Civil Practice Act § 48(8).[58] Through enactment of CPA § 48(8), the New York Legislature sought to apply a uniform six year statute of limitations to all actions by or on behalf of corporations, whether "legal or equitable," except for claims "to recover damages for waste or for an injury to property," in which

case the three year period under CPA § 49(7) remained in effect.[59] The Legislature was concerned that then "existing statutes prolonged the possibility of suit to such an extent that directors and officers were prejudiced by the lapse of time in making their defense," so the new rule under CPA § 48(8) was intended to shorten the period for such claims.[60]

In 1963, the CPLR replaced the CPA, and the provision formerly known as CPA § 48(8) was incorporated, with several changes, as the current Section 213(7).[61] The Legislature eliminated the exceptions for waste and property from the enacted CPLR provision to avoid confusion, opting instead to apply the six year period uniformly to all claims brought by or on behalf of corporations against directors, officers or shareholders.[62]

Defendant argues that the applicable statute of limitations is that for "injury to property" under Section 214(4), rather than the "injury to property" provision in Section 213(7), but relies upon cases which did not involve actions by or on behalf of the corpo-

**58.** Civil Practice Act § 48(8) provided for a six year period, measured from the date of the breach, for "an action, legal or equitable, by or on behalf of . a corporation against a director, officer or stockholder, or a former director, officer or stockholder, if such action is for an accounting, or to procure judgment on the ground of fraud, or to recover a penalty or forfeiture imposed or to enforce a liability created by common law or by statute unless such action is one to recover damages for waste or for an injury to property or for an accounting in connection therewith in which case such action shall be subject to the provisions of subdivision seven of section forty-nine."

**59.** See *Saylor v. Lindsley*, 302 F.Supp. 1174, 1180 (S.D.N.Y.1969). CPA § 49(4) also excepted from CPA § 48(8) actions against directors or stockholders of moneyed corporations or banking associations. This exception was eliminated when CPLR § 213(7) was passed in 1963. See Sen. Fin. Comm. Rep., LEG. DOC. NO. 8, 91 (1962); 5 N.Y. Adv. Comm. Rep. A–146–47 (Advance Draft 1961).

**60.** Samuel M. Hesson, *The Statute of Limitations in Actions to Set Aside Fraudulent Conveyances and in Actions Against Directors by Creditors of Corporations*, 32 CORNELL L.Q. 222, 222 (1946). Prior to enactment of CPA § 48(8), five different statutory periods applied to shareholder deriva-

tive or corporate claims against directors, officers or shareholders: (1) ten years if the action was exclusively equitable and not based on fraud; (2) six years if for "money had and received"; (3) six years after discovery of the facts where the action was based on fraud; (4) three years if an action for "injury to property"; and (5) notwithstanding the above, three years from discovery where the corporation is a "moneyed corporation" and the action is not for an exclusively equitable remedy nor for fraud. See N.Y. Law Rev. Comm. Rep., LEG DOC. No. 65, 152–53 (1942). The primary effect of CPA § 48(8) was to reduce the period for equitable actions from ten years to six.

**61.** The provision originally was CPLR § 213(8). It became Section 213(7) after a renumbering of Section 213 in 1975.

**62.** See Sen. Fin. Comm. Rep., LEG. Doc. No. 8, 90–91 (1962) (stating that the elimination of the exception to Section 213(7) will "make the same period applicable to all actions against a director, officer or stockholder of a corporation"); 1 JACK B. WEINSTEIN ET AL., NEW YORK CIVIL PRACTICE ¶ 213.23, at 2–371 (rev. ed.1997). Additionally, the words "legal or equitable" reportedly were "omitted as mere surplusage in view of the common understanding that the 1942 legislation eliminated the prior distinctions based on the lawequity dichotomy." *Id.* ¶ 213.22.

ration.[63] Obviously, once the Legislature removes a certain class of cases from a particular provision, the new, more specific limitations period will govern over the prior, more general period. For example, the medical malpractice statute of limitations, CPLR § 214–a, would control for medical malpractice claims, rather than the statutory period for negligence or contract, assuming the other requirements of CPLR § 214–a are satisfied.[64] Likewise, because plaintiff's breach of fiduciary duty claim fits squarely within CPLR § 213(7), defendant is not entitled to the benefit of the shorter limitations period in CPLR § 214(4). The Court therefore holds that the six-year period under Section 213(7) applies to plaintiff's claim for breach of fiduciary duty.

*Accrual of the Cause of Action*

Although the claim was not brought within six years of the alleged breach, plaintiff asserts that it nevertheless is timely because the cause of action did not accrue until it had actual or constructive knowledge of the breach.[65] Plaintiff cites several cases that have held that the statute of limitations for breach of fiduciary duty claims does not be-

gin to run until the plaintiff has actual or constructive knowledge of the injury.[66] Defendant responds with precedent that suggests that claims of breach of fiduciary duty based on the diversion of a corporate opportunity accrue on the date when the corporate opportunity first was diverted.[67]

To resolve this conflict of authority, the starting point once again is the legislative history of Section 213(7). CPA § 48(8), Section 213(7)'s predecessor, was enacted in large part to shorten the prescriptive period applicable to claims brought by or on behalf of corporations against their directors, officers or shareholders because the Legislature felt it would prejudice directors and officers and corporate affairs for claims to be delayed for a long time after an alleged breach occurred.[68] The Legislature effected this goal not only by reducing the number of years within which to bring claims pursuant to CPA § 48(8),[69] but also by opting to have such claims accrue upon breach, rather than upon plaintiff's discovery of the breach.[70] When the CPLR was passed in 1963, the Legislature again provided for claims under CPLR 213(7) to accrue upon breach, rather than plaintiff's discovery of the breach.[71]

63. *See Raul v. American Stock Exchange*, 1996 WL 381781 (claim by stock exchange member against exchange); *Salzmann*, 1994 WL 191855 (corporate bondholders in individual capacity suit against corporation); *Geren*, 832 F.Supp. 728 (same); *Merine v. Prudential–Bache Utility Fund, Inc.*, 859 F.Supp. 715, 725 (S.D.N.Y.1994) (same).

64. *See, e.g., Calhoun v. Gale*, 29 A.D.2d 766, 767, 287 N.Y.S.2d 710, 711 (2d Dep't), *aff'd*, 23 N.Y.2d 756, 244 N.E.2d 468, 296 N.Y.S.2d 953 (1968) ("Since in this case appellant's common-law duty and his alleged contractual relationship were one and the same. the suit, however labeled, is one in malpractice, at least for time limitation purposes. Accordingly, the [medical malpractice] period of limitation applies.") (citations omitted).

65. Pl. Mem. 19 ("the six year statute of limitations does not commence running until Whitney holdings has actual or constructive knowledge of the breach of fiduciary duty").

66. *Id.* citing *Zola v. Gordon*, 685 F.Supp. 354, 374 (S.D.N.Y.1988); *In re Argo Communications Corp.*, 134 B.R. 776, 787 (S.D.N.Y.1991) (citing cases); *Provident Life and Cas. Co. v. Ginther*, No. 96 Civ. 0314E, 1997 WL 9779, 1997

U.S.Dist.LEXIS 89, at *9 (W.D.N.Y. Jan. 3, 1997).

67. *Lindberg v. Home Reporter*, No. 77 Civ. 25(MP), slip op. (S.D.N.Y. Jan. 17, 1978).

68. *See* n. 60, *supra*, and accompanying text.

69. *See* n. 60, *supra*.

70. The Legislature explicitly rejected the discovery rule for CPA § 48(8), despite the fact that a discovery rule applied to claims against moneyed corporations or banking associations, *see* CPA § 49(4) ("The cause of action is not deemed to have accrued until the discovery by the plaintiff of the facts under which the penalty or forfeiture attached or the liability was created."), and despite the fact that many states tolled until discovery stockholder derivative actions, even when not based on fraud. *See* N.Y. Law Rev. Comm. Rep. 165–66 (1942).

71. The Legislature briefly considered enacting a discovery provision to apply to the new Section 213(7). In 1960, the Advisory Committee circulated tentative drafts which would have added the discovery rule to the new Section 213(7) but only as to actions "to enforce a liability, penalty

Despite the general rule that claims under CPA § 48(8) and Section 213(7) accrue upon breach rather than discovery, New York law traditionally has excepted claims of fraud, which instead accrue only upon the plaintiff's actual or constructive discovery of the facts constituting the fraud.[72] Nevertheless, both by statute and judicial interpretation, this discovery rule applies only to claims of actual fraud—that is, fraud claims alleging an intent to deceive.[73] Claims of constructive fraud, i.e., a fiduciary's simple nondisclosure of facts it is obligated to disclose, accrue upon breach.[74] Indeed, when CPA § 48(8) was passed, it initially was unclear whether actual fraud actions brought pursuant to the new uniform six year period therein would continue to benefit from the discovery rule. Many commentators thought that the Legislature intended to abolish the discovery rule even as to actual fraud claims, if brought by or on behalf of a corporation against a director, officer or shareholder.[75] Nonetheless, New York courts continue to adhere to the actual versus constructive fraud distinction and apply the discovery rule only to actual fraud claims brought under CPA § 48(8) or Section 213(7).[76]

As previously explained, the breach of fiduciary duty claim here is governed by the

or forfeiture." *See* Proposed §§ 5.13(8), in 2 N.Y. Adv. Comm. Rep. 68–70 (1958). However, shortly after introduction of the 1960 bill, the discovery provision was stricken. 5 N.Y. Adv. Comm. Rep. A–147 (1961).

72. CPLR § 213(8) provides that in "an action based upon fraud; the time within which the action must be commenced shall be .computed from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it." Section 213(8) was derived from CPA § 48(5), which set forth actions to be commenced within six years including "[a]n action to procure a judgment on the ground of fraud. The cause of action in such a case is not deemed to have accrued until the discovery by the plaintiff, or the person under whom he claims, of the facts constituting the fraud." *See also* Note, *Limitation of Actions in New York in Stockholders' Derivative Suits Against Directors*, 54 Harv. L. Rev. 1040, 1042–43 (1941) ("in an action based on fraud, the period, under Section 48(5), is reckoned from the discovery by the plaintiff of the facts constituting the fraud").

73. The Legislature enacted Section 213(8) primarily in order to make clear that the discovery accrual provision adheres only to actual fraud claims. *See* Report of the Judicial Conference to the 1965 Legislature in Relation to the Civil Practice Law and Rules 16–17 (Feb. 1, 1965) ("in the area of constructive fraud it has long been the rule that the statute of limitations begins to run upon commission .of the fraud rather than upon its discovery ... The Conference therefore believes that the substance of the [former fraud provisions] should be placed in § 213 in a new subdivision ... thereby making it clear that the discovery provision applies only to actions for actual fraud."). *See also, 509 509 Sixth Ave. Corp. v. New York City Transit Auth.*, 15 N.Y.2d 48, 51, 203 N.E.2d 486, 487, 255 N.Y.S.2d 89, 91 (1964); *Rattner v. York*, 174 A.D.2d 718, 571 N.Y.S.2d 762 (2d Dep't 1991); *Quadrozzi Concrete Corp. v. Mastroianni*, 56 A.D.2d 353, 392 N.Y.S.2d 687 (2d Dep't 1977); *Glover v. National Bank of Commerce of New York*, 156 A.D. 247,

141 N.Y.S. 409, .416 (1st Dep't 1913) ("It is equally clear ... that the fraud which will entitle a plaintiff to the benefit of the exception is actual and intentional fraud, involving mala fides on the part of the defendant sought to be charged, and not a mere breach of duty, or the omission or exercise due care, which are sometimes loosely designated as 'legal fraud' or 'constructive fraud.'"); *Eisenberg v. Grossman*, 84 N.Y.S.2d 118, 121 (Sup.Ct.N.Y.1948) (holding the fraud discovery provision "pertains only to common law actions of deceit.").

74. *See, e.g., Quadrozzi*, 56 A.D.2d at 356, 392 N.Y.S.2d at 688 ("A cause of action predicated upon the ground of constructive fraud must be commenced within six years from the date of the commission of the fraud.").

75. "While the statute does not expressly say that the fraud action [in CPA § 48(8)] is barred six years from the date of the fraud, the sponsors of the bill intended to abolish, as to corporate actions against directors and officers, the rule that the time is measured from the date of discovery of the fraud. Justification for such exceptional treatment was found in the fact that modern regulation of corporations gives the stockholders better opportunity to familiarize themselves with their corporation's affairs." Hesson, *supra*, note 60. Another wrote that the statute of limitations is "six years if based on fraud (the six years presumably running from the date of the fraud, *not* its discovery)." George D. Hornstein, *New Aspects of Stockholders' Derivative Suits*, 47 Colum. L. Rev. 1, 8 (1947).

76. *E.g., Lindberg v. Home Reporter*, No. 77 Civ. 25(MP), slip op. (S.D.N.Y.1978); *Myer v. Myer*, 271 A.D. 465, 66 N.Y.S.2d 83, 93 (1st Dep't 1946); *Ripley v.. International Ry. of Cent. America*, 196 Misc. 798, 95 N.Y.S.2d 202 (Sup.Ct.N.Y. 1949); *see also* Note, *Statute of Limitations and Shareholders' Derivative Actions*, 56 Colum. L. Rev. 106, Ill n. 31–32 (1956).

six year period of Section 213(7). Plaintiff in this case therefore may gain the benefit of a discovery accrual rule only by establishing that the breach of fiduciary duty claim is essentially one of actual fraud.[77]

 Whether a claim properly is considered one for actual fraud must be determined by looking "for the reality, and the essence of the action and not its mere name."[78] For purposes of deferring accrual until discovery, plaintiff cannot convert a constructive fraud claim into a one for actual fraud merely by conclusory allegations of fraud.[79] "[C]ourts will not apply the fraud statute of limitations if the fraud allegation is only incidental to the claim asserted; otherwise fraud would be used as a means to litigate stale claims."[80] On the other hand, if plaintiff sufficiently pleads actual fraud, even actual fraud by a fiduciary, then the discovery rule applies.[81]

Turning to Whitney's first cause of action, the Court finds it clear that the gravamen of the claim is constructive, not actual, fraud. Plaintiff's Amended Complaint alleges no intent to deceive. Instead, plaintiff sets forth what appears to be a straightforward constructive fraud claim—that Givotovsky owed a fiduciary duty to disclose the corporate opportunity to Whitney and failed to do so.[82] Permitting plaintiff to secure the benefit of the discovery rule for its diversion of corporate opportunity claim despite the lack of allegations of an intent to deceive would frus-

---

**77.** Plaintiff's reliance on *Zola v. Gordon*, 685 F.Supp. 354, 374 (S.D.N.Y.1988), is misplaced. *Zola*, unlike this case, relied for its discovery rule on Section 206(1), in which demand is required before commencement of an action. *See id.* at 374 & n. 25 (citing CPLR § 206(a)(1)). The claim involved in the instant case is not a derivative shareholder's suit and therefore a demand is not required as a condition precedent to suit.

**78.** *Druckerman v. Harbord*, 31 N.Y.S.2d 867, 870 (Sup.Ct.N.Y.1940) (quoting *Brick v. Cohn–Hall–Marx Co.*, 276 N.Y. 259, 264, 11 N.E.2d 902, 904 (1937)); *see also Corash v. Texas Co.*, 264 A.D. 292, 298, 35 N.Y.S.2d 334, 338 (1st Dep't 1942); *Glover v. National Bank of Commerce of New York*, 156 A.D. 247, 141 N.Y.S. 409, 416 (1st Dep't 1913) ("It seems too clear to need extended argument or the citation of numerous authorities to demonstrate that the only actions covered by [the fraud discovery provision] are actions in which the fraud complained of is the essential fact which constitutes the gravamen of the cause of action, and in which there would be *no injury except for the fraud*."); *Eisenberg v. Grossman*, 84 N.Y.S.2d 118, 121–22 (Sup.Ct.N.Y.1946); *Weinstein v. Behn*, 65 N.Y.S.2d 536, 544 (Sup.Ct. N.Y.1946).

**79.** *Eisenberg*, 84 N.Y.S.2d at 121–22 ("The use of the word 'fraudulent' is incidental. . . . 'There is no allegation that this defendant has committed any specific acts of fraud as that term has been applied to cases coming under Section 48(5) of the Civil Practice Act. There are to be sure, general allegations of fraud. But these allegations without facts to support them are insufficient. It is not enough to charge the defendants with fraud 'adverbially.' ") (citations omitted); *Druckerman v. Harbord*, 31 N.Y.S.2d 867, 870 (Sup.Ct.N.Y.1940) ("The test of whether fraud is the gravamen of the action is not merely whether fraud has been alleged, but whether 'there would be no injury except for the fraud.' ").

**80.** *Powers Mercantile Corp. v. Feinberg*, 109 A.D.2d 117, 120, 490 N.Y.S.2d 190, 192 (1st Dep't 1985), *aff'd*, 67 N.Y.2d 981, 494 N.E.2d 106, 502 N.Y.S.2d 1001 (1986).

**81.** *See Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 325–26, 144 N.E.2d 78, 80–81, 165 N.Y.S.2d 107, 110–11 (1957) ("As we read the complaint we find that despite the allegations of fiduciary relationship and the breach thereof, there are other allegations which, expressly and by fair and reasonable intendment, are sufficient to make the action one to procure a judgment on the ground of fraud within the contemplation of [CPA § 48(5)] . . . . That the relief requested is not consistent with these allegations is of no moment. A prayer for relief may be resorted to as an aid in determining the nature of a cause of action. However, it is not controlling and may even be disregarded if inappropriate.") (citations omitted); *Nasaba Corp. v. Harfred Realty Corp.*, 287 N.Y. 290, 296, 39 N.E.2d 243, 246 (1942) ("where the complaint may be so construed as to state causes of action the prosecution of which is not barred by any statute of limitations, speculation as to what other cause of action may be sufficiently alleged to warrant recovery thereunder which may be barred by some statute of limitations should not be indulged") (citations omitted); *Quadrozzi Concrete Corp. v. Mastroianni*, 56 A.D.2d 353, 358, 392 N.Y.S.2d 687, 690 (2d Dep't 1977) ("an examination of the complaint discloses that it contains allegations which are sufficient to construe it as an action for actual fraud."); Note, *Limitation of Actions in New York in Stockholders' Derivative Suits Against Directors*, 54 Harv. L. Rev. 1040, 1044 (1941) ("a director who has been fraudulent should not be permitted to escape the stricter provisions of that section because his fraud also constitutes a breach of fiduciary duty.").

**82.** *See* Am. Cpt. ¶¶ 16–20.

trate the clear intent of the Legislature that Section 213(8) apply only to actual fraud claims. Moreover, to do so would render plaintiff's first cause of action entirely duplicative of the second cause of action in which plaintiff more forthrightly alleges fraud.

Because the discovery rule does not apply in the absence of allegations of actual fraud, this Court holds that the first cause of action in this case accrued on the date when the breach occurred, in other words when the corporate opportunity first was diverted. The corporate opportunity here was diverted, at the latest, on November 30, 1988. The complaint, filed almost eight years later, does not satisfy the six-year statute of limitations as to this claim.

### Equitable Estoppel

 Finally, the Court considers whether this claim nevertheless is timely because defendant is equitably estopped from raising the statute of limitations defense. Based on the "maxim that no man may take advantage of his own wrong,"[83] the doctrine of equitable estoppel bars a defendant from relying on the statute of limitations when the defendant's own actions have prevented plaintiff from timely bringing suit. In New York, "a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."[84]

Typically, New York courts apply equitable estoppel only where the defendant has engaged in affirmative acts of misrepresentation or concealment.[85] However, some decisions suggest that the failure to disclose facts underlying a claim, even without any affirmative acts of concealment, nevertheless may equitably estop a statute of limitations defense if the defendant stood in a fiduciary relationship which obligated the defendant to inform the plaintiff of such facts.[86]

While in principle nondisclosure by a fiduciary alone might give rise to equitable estoppel, the few cases which even recite this principle rely on it only in finding no fiduciary relationship and, hence, no equitable estoppel.[87] In any event, the Court need not decide as a general matter whether equitable estoppel should bar a fiduciary from raising a statute of limitations defense based purely on the fiduciary's nondisclosure because in this case the equitable estoppel issue is presented in the context of a statute whose language and history make clear that the timeliness of the claim should be reckoned from the breach itself and not in accordance with

83. *Erbe v. Lincoln Rochester Trust Co.*, 13 A.D.2d 211, 214, 214 N.Y.S.2d 849, 852 (4th Dep't 1961) (quoting *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 232–33, 79 S.Ct. 760, 761–62, 3 L.Ed.2d 770 (1959)).

84. *Simcuski v. Saeli*, 44 N.Y.2d 442, 448–49, 377 N.E.2d 713, 716, 406 N.Y.S.2d 259, 262 (1978); *see also General Stencils v. Chiappa*, 18 N.Y.2d 125, 127–28, 219 N.E.2d 169, 170–71, 272 N.Y.S.2d 337, 339–40 (1966); N.Y. Gen. Oblig. Law § 17–103(4)(b) (McKinney 1990) (provisions do "not affect the power of the court to find that by reason of conduct of the party to be charged it is inequitable to permit him to interpose defense of statute of limitations.").

85. *See Glover v. National Bank of Commerce of New York*, 156 A.D. 247, 141 N.Y.S. 409, 416 (1st Dep't 1913) ("even where fraudulent concealment will postpone the operation of the statute [of limitations] it must be something more than mere silence, and must consist of some affirmative act of misrepresentation or the like.").

86. *Jordan v. Ford Motor Co.*, 73 A.D.2d 422, 424, 426 N.Y.S.2d 359, 360 (4th Dep't 1980) ("where concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing an action within the Statute of Limitations, the courts have invoked estoppel only where there was a fiduciary relationship which gave defendant an obligation to inform plaintiff of facts underlying the claim"); *see also Simcuski*, 44 N.Y.2d at 452, 406 N.Y.S.2d 259, 377 N.E.2d 713 ("nondisclosure or concealment may ... in a proper case in conjunction with other factors, provide a foundation for seeking to invoke the doctrine of equitable estoppel to extend the applicable period of limitations"); Weinstein, *supra* note 62, ¶ 201.13, at 2–38 ("where there is a fiduciary relationship between the parties, the fiduciary will be held to a higher standard, and if he intentionally fails to disclose facts which he has a duty to reveal, he will be guilty of fraudulent concealment").

87. *See, e.g., Jordan*, 73 A.D.2d at 424, 426 N.Y.S.2d at 361 (finding plaintiff failed to allege a "relationship that would give rise to a justifiable expectation that defendant would come forward with facts known to it which might be used as the basis for a claim").

plaintiff's discovery of the facts constituting the claim.

As discussed above, New York law provides for accrual of causes of action governed by CPLR § 213(7) upon plaintiff's discovery only for claims of actual, but not constructive, fraud.[88] A breach of fiduciary duty claim premised on the nondisclosure of the fiduciary amounts to a pure constructive fraud claim if plaintiff does not allege the fiduciary's intent to deceive. Applying equitable estoppel to such a constructive fraud claim would circumvent the legislative distinction between actual and constructive fraud cases because the practical effect of equitable estoppel would be the same as if the discovery rule applied: tolling the cause of action until plaintiff's discovery of the claim.[89] If, as plaintiff argues, the only requirement for equitable estoppel is nondisclosure of a claim by a fiduciary, then constructive fraud claims, which by their very nature involve nondisclosure of a fiduciary, automatically would qualify for equitable estoppel in virtually every case and therefore would not accrue until discovery. Certainly this was not the result intended or foreseen by the New York Legislature and courts.

Moreover, Whitney's argument for equitable estoppel—that Givotovsky failed to disclose the corporate opportunity to Whitney as his fiduciary status required him to do—essentially mirrors plaintiff's underlying claim—Givotovsky's breach of fiduciary duty for failure to disclose the corporate opportunity. The New York Court of Appeals has refused to find fraudulent concealment in an analogous situation, where the failure to disclose a medical problem gave rise to a medical malpractice claim, because the grounds for relief and the grounds for fraudulent concealment were one and the same.[90]

Because the Legislature has made clear that constructive fraud claims governed by CPLR § 213(7) accrue upon commission of the fraud, and not its discovery, and because the bases for equitable estoppel and the breach of fiduciary duty claim are identical, equitable estoppel is not appropriate in this case.[91]

Even assuming equitable estoppel were to apply to this fiduciary nondisclosure claim, plaintiff has not satisfied its burden of pleading. To invoke equitable estoppel, plaintiff must demonstrate due diligence in bringing the cause of action and reasonable care in ascertaining facts which might have led to discovery of defendant's wrong.[92] Far

88. *See* text accompanying notes 72–80.

89. *See Zola v. Gordon*, 685 F.Supp. 354, 365 (S.D.N.Y.1988) ("in cases involving fiduciary relationships, tolling ceases to work to a plaintiff's benefit when the plaintiff possesses sufficient facts that he must engage in some inquiry, and he fails to live up to this obligation").

90. *Rizk v. Cohen*, 73 N.Y.2d 98, 535 N.E.2d 282, 538 N.Y.S.2d 229 (1989) (refusing to apply equitable estoppel where the "plaintiff relies on the same act which forms the basis of his [underlying] negligence claim"); *see also Chesrow v. Galiani*, 234 A.D.2d 9, 650 N.Y.S.2d 158 (1st Dep't 1996) (same).

91. Plaintiff relies primarily on *Zola v. Gordon*, 685 F.Supp. 354 (S.D.N.Y.1988), and *Bennett Silvershein Associates v. Furman*, No. 91 Civ. 3118(JGK), 1997 WL 531310 (S.D.N.Y. Aug.28, 1997). Both cases involved the failure of general partners to disclose to limited partners certain information that affected the value of their partnership interests, the failure to disclose being different from the underlying causes of action for fraud. Both are additionally distinguishable from the instant case on two separate grounds. In *Zola*, the court was looking to state law for guidance in applying the federal common law of accrual applicable only to federally created rights, and ultimately relied on cases involving the federal fraudulent concealment doctrine. *See Zola*, 685 F.Supp. at 363–64 ("Although state law controls the limitations period, the date the statute begins to run is determined by federal common law."); *see also Moviecolor Limited v. Eastman Kodak Co.*, 288 F.2d 80 (2d Cir.1961) (holding that the federal rule of equitable tolling applies only to federally created rights). The plaintiffs in *Bennett*, in contrast to the plaintiff in this action, alleged "a detailed active campaign of misrepresentations and omissions which was calculated to cover up the fraud itself." 1997 WL 531310, at *6.

92. *Simcuski v. Saeli*, 44 N.Y.2d at 450, 377 N.E.2d at 717, 406 N.Y.S.2d at 263 ("due diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks shelter of the doctrine"); *Overall v. Estate of Klotz*, 52 F.3d 398 (2d Cir.1995) (under New York law, "a plaintiff invoking estoppel must show that he brought his action 'within a reasonable time after the facts giving rise to the estoppel have ceased

from making the requisite showing, Whitney simply asserts that it did not know of the cause of action until June 1995 and that it commenced the action in November 1996. Whitney· has neither affirmatively pleaded diligence in bringing the action ·nor even asserted that it could not have discovered the facts underlying the claim until 1995.[93] In short, Whitney has failed to allege its due diligence or reasonable care.

For all of the foregoing reasons, Givotovsky is entitled to summary judgment dismissing the breach of fiduciary duty claim.

### The Fraud Claim

■ Defendant alleges that plaintiff's second cause of action, for fraud, is similarly time-barred because it was not brought within six years of the commission of the alleged fraud, as required by CPLR § 213(7). Moreover, defendant contends that the discovery rule of Section 213(8), which would toll the statute of limitations until discovery of the fraud by the plaintiff, does not apply because the plaintiff alleges, at most, a claim of constructive fraud.

As discussed above, Section 213(7) requires an action by a corporation against a former director, officer or shareholder sounding in fraud to be commenced within six years from the time the cause of action accrues.[94] Under Sections 213(8) and 203(f), actual fraud claims must be brought within six years of the commission of the fraud or two years from the time the plaintiff discovered, or with reasonable diligence could have discovered, the fraud, whichever is later.[95] Claims for constructive fraud, however, must be commenced within six years from the date of the commission of the fraud.[96] Whitney's fraud claim was brought more than eight years after the alleged injury and therefore can survive summary judgment only if it is entitled to the benefit of the discovery rule. In short, Whitney must show that its claim is for actual, not merely constructive, fraud.

■ Actual fraud requires "detrimental reliance on a knowingly false representation or, in the absence of affirmative misrepresentation, damage resulting from concealment, with intent to defraud, of facts which one is under a duty to disclose."[97] Where there is a fiduciary relationship, such as between a director or officer and a corporation, the mere failure to disclose facts which one is required to disclose may constitute actual fraud, provided the fiduciary possesses the requisite intent to deceive.[98] "Concealment

to be operational' ") (quoting *Simcuski, id.*); *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1494 (2d Cir.1995) (plaintiff must show that he brought his action within a reasonable time after the facts giving rise to the .estoppel have ceased to be operational); *Zola*, 685 F.Supp. at 365 ("plaintiffs bear the burden of demonstrating that they exercised due diligence and reasonable care"); *Klein v. Spear, Leeds, & Kellogg*, 306 F.Supp. 743, 749 (S.D.N.Y.1969) (plaintiff must "show that he remained in ignorance of the fraud of his fiduciaries without any fault or want of due diligence or due care on his part").

93. *Cf. Bennett Silvershein Associates*, 1997 WL 531310, at *6–7 (finding fraudulent concealment where plaintiffs presented "evidence that they were unable to discover any of the material facts and circumstances underlying the fraud until" after the statute of limitations had expired).

94. CPLR § 213(7) provides: "The following actions must be commenced within six years: ... an action by or on behalf of a corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud ...."

95. *See* CPLR § 213(8): for "an action based upon fraud; the time within which the action

must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."; CPLR § 203(f): [for cases relying on the discovery rule,] "the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer."

96. *See* notes 73–74, *supra*, and accompanying text.

97. 75 N.Y.Jur.2d, *Limitations and Laches* § 123, at 296 (4th ed.1990); *accord Nasaba Corp. v. Harfred Realty Corp.*, 287 N.Y. 290, 294–95, 39 N.E.2d 243, 245 (1942) ("Actual fraud, as distinguished from constructive fraud, involves the element of deceit practiced upon the party defrauded.").

98. *See Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 144 N.E.2d 78, 165 N.Y.S.2d 107 (1957); *O'Hayer v. de St. Aubin*, 30 A.D.2d 419, 293 N.Y.S.2d 147 (2d Dep't 1968); 75 N Y.Jur.2d, *Limitations and Laches* § 217, at 406–07 (4th ed.1990).

*with intent to defraud* of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact." [99] Constructive fraud, on the other hand, requires no proof of *scienter.* "[T]he same elements which compose [actual fraud] constitute [constructive fraud] except for the distinguishing feature that intent is absent in constructive fraud." [100]

Courts must look to the gravamen of plaintiff's claim to determine whether actual fraud is alleged. "It is a well-established principle of law that where an allegation of fraud is not essential to the cause of action pleaded except as an answer to an anticipated defense of statute of limitations, courts 'look for the reality, and the essence of the action and not its mere name.'" [101] The mere fact that a claim may stand on its own absent any allegations of fraud does not necessarily deprive the plaintiff of the benefit of the discovery rule where actual fraud can be proven. So long as there are sufficient allegations of actual fraud as contemplated by CPLR § 213(8), regardless of whether a fiduciary relationship is also proven, then the plaintiff is entitled to the benefit of the discovery rule for purposes of defeating a summary judgment motion. [102]

Whitney's second cause of action alleges fraud based on Givotovsky's failure to disclose his compensation arrangement with Audre. [103] The claim, in essence, is that Givotovsky owed a fiduciary duty of candor to Whitney, and his failure to disclose his compensation arrangement with Audre breached that duty. The complaint does not allege an intent to deceive. The second cause of action must be dismissed because it states a claim for constructive fraud and so does not fall within the discovery rule of CPLR § 213(8).

While the second cause of action is time barred in its present form, it is far from clear that plaintiff is incapable of alleging a claim for actual fraud in the circumstances of this case. Given the coincidence of Givotovsky's resignation from the Whitney board of directors and his agreement with Audre, one reasonably might infer that his resignation was intended to avoid any claim by Whitney to the 300,000 shares of Audre stock that Givotovsky thought he would receive. One might infer further that he deliberately withheld the information for the purpose of deceiving Whitney. With more detailed allegations of an actual fraudulent intent to deceive and appropriate allegations as to when plaintiff discovered or is charged with discovery of the relevant facts, Whitney's second claim might be timely under CPLR § 213(8). In consequence, the dismissal of the second claim is without prejudice to the filing of an amended complaint alleging a claim for actual fraud. [104]

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment dismissing the

**99.** *Nasaba Corp.,* 287 N.Y. at 295, 39 N.E.2d at 245 (emphasis added).

**100.** *Manheim Dairy Co. v. Little Falls Nat Bank,* 54 N.Y.S.2d 345, 349 (Sup.Ct.N.Y.1945); *see also Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186 (2d Dep't 1980).

**101.** *Powers Mercantile Corp. v. Feinberg,* 109 A.D.2d 117, 490 N.Y.S.2d 190, 192 (1st Dep't 1985) (quoting *Brick v. Cohn–Hall–Marx Co.,* 276 N.Y. 259, 264, 11 N.E.2d 902 (1937)), *aff'd,* 67 N.Y.2d 981, 494 N.E.2d 106, 502 N.Y.S.2d 1001 (1986).

**102.** *See Erbe v. Lincoln Rochester Trust Co.,* 3 N.Y.2d 321, 165 N.Y.S.2d 107, 144 N.E.2d 78 (1957) ("despite the allegations of fiduciary relationship and the breach thereof, there are other allegations which expressly and by fair and reasonable intendment, are sufficient to make the action one to procure a judgment on the ground of fraud within the contemplation of [CPLR 213(8)"); *see also Quadrozzi,* 56 A.D.2d at 358, 392 N.Y.S.2d 687 at 690 ("in the instant case, an examination of the complaint discloses that it contains allegations which are sufficient to construe it as an action for actual fraud."); *Nasaba,* 287 N.Y. at 295–96, 39 N.E.2d at 245–46 ("It well may be that the evidence adduced upon a trial will not be sufficient to sustain the alleged fraud or, on the contrary, that it will be sufficient to establish that the plaintiffs had knowledge of the alleged fraud more than six years before this action was commenced, but on a motion of this kind we do not pause to indulge in such speculations."); Weinstein, *supra* note 62, ¶ 213.26, at 2–386.

**103.** Am. Cpt. ¶¶ 21–25.

**104.** Fed.R.Civ.P. 15(a) requires that leave to amend "be freely given when justice so requires."

complaint is granted. Plaintiff may file an amended complaint alleging a claim for actual fraud within 30 days from the date of this opinion.

SO ORDERED.